PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JUAN TELMAÍN ESCALERA ET AL., Defendants and Appellants.

No. 4967. Argued April 9, 1933.—Decided July 19, 1933.

434

W. L. *Newsom* for appellants. *José R. Quiñones* and *R. A. Gómez, Fiscal,* for appellee.

Mr. Justice Córdova Dávila delivered the opinion of the Court.

Juan Telmaín Escalera, José de Jesús Guadalupe, and Amalio Rivera Mojica were sentenced to three months in jail by the Municipal Court of Humacao. They were charged with a violation of section 328 of the Penal Code. On appeal to the District Court of Humacao, Amalio Rivera Mojica was acquitted, and the other two defendants were found guilty and each sentenced to pay a fine of $100 and, in default thereof, to be confined in jail one day for each dollar left unpaid, such imprisonment not to exceed 90 days. Three errors are assigned in the appeal taken by the defendants to this court. The first two relate to the action of the lower court in overruling the demurrers filed by the defendants, and in denying a motion for nonsuit at the close of the evidence for the prosecution. The demurrers presented by the defendants in the lower court read as follows:

"1.—That the complaint does not contain a statement of the acts constituting the offense charged, in clear, concise, and ordinary language, and it is not drawn in such manner as to enable a person of common intelligence to understand it, and hence it does not essentially comply with the requirements established by section 71 of the Code of Criminal Procedure.

"2.—That said complaint does not essentially comply with the requirements established by sections 72 and 73 of the Code of Criminal Procedure.

"3.—That said complaint charges more than one offense in that it alleges that the defendants wilfully caused the aforesaid engine to collide with the automobile described in the complaint, which is a crime not comprised within said section 328 of the Penal Code.

"4.—That the facts alleged in said complaint do not constitute a violation of the aforesaid section 328 of the Penal Code, because

it is not alleged that the defendants were wholly or in part charged with the duty of dispatching or directing the movements of the aforesaid locomotive, nor is it alleged that the defendants are guilty of gross negligence or carelessness."

The defendants argued jointly all the above grounds of demurrer which refer to the first assignment and are intimately connected with the second. There is involved in this case a complaint filed by an insular policeman and which reads as follows:

". . . on January 3, 1932, (at 3 P. M.) and on Highway No. 28, Las Piedras Section, P. R., within the municipal judicial district of Humacao, P. R., which forms part of the judicial district of Humacao, then and there, the defendants Juan Telmaín Escálera, Amalio Rivera Mojica, and José de Jesús Guadalupe, while working respectively as engineer, switch tender, and stoker, of locomotive No. 5, the property of the Juncos Central, due to the slight prudence and circumspection they exercised in going upon a siding which crosses Insular Highway No. 28, where there was no flagman, wilfully caused the aforesaid engine to collide with automobile No. P–2452 driven by Prudencio Sánchez Vélez, a chauffeur who was then traveling along the said highway towards Juncos at a moderate rate of speed, blowing his horn, and on the right side of the road, and in consequence of the said collision, the automobile was completely destroyed, the passenger José Texidor Just sustained serious wounds and contusions of some gravity for which he was treated in the Municipal Hospital of Caguas by Dr. Genaro Barreras, and the passengers Zoilo Dueño, Antonio López Quiñones, and José Jiménez Matta received slight wounds and contusions."

The defendants maintain that the facts are not alleged in concise and ordinary language, and in such manner as to enable a person of common intelligence to understand it, as provided by section 71 of the Code of Criminal Procedure.

Section 328 of the Penal Code, as amended in 1916, reads as follows:

"Every conductor, engineer, brakeman, switchman, or other person having charge wholly or in part of any railroad car, locomotive, automobile, train or steamboat, and any train dispatcher, telegraph operator, station agent, or other person wholly or in part charged

with the duty of dispatching or directing the movements of any such car, locomotive, automobile, train or steamboat, who, through gross negligence or carelessness, suffers or causes the same to collide with another car, locomotive, automobile, train or steamboat, or with any other object or thing whereby the death of a human being is produced, is punishable by imprisonment in the penitentiary for a maximum term of five years.

"If as a consequence of the collision, injury is suffered by any person, such conductor, engineer, brakeman, switchman or other person shall be punishable by imprisonment in jail for a maximum term of two years, or by a maximum fine of one thousand dollars, or by both penalties in the discretion of the court."

This section originally punished by imprisonment in the penitentiary every conductor, engineer, etc., or other person having charge wholly or in part of any railroad car, etc., who wilfully or negligently suffered or caused the same to collide with another car, locomotive, or train, or with any other object whereby the death of a human being was produced.

In 1908 the words "wilfully or negligently" were substituted by the words "unskillfulness, negligence, or carelessness," and in 1916 the section was further amended by substituting the words "gross negligence or carelessness" for "unskillfulness, negligence, or carelessness."

The defendants say that the complaint in this case wholly lacks any allegation of gross negligence or carelessness, which doubtless is an indispensable requisite in order to charge a violation of section 328 of the Penal Code.

In accordance with said section, the crime may be committed through gross negligence or carelessness. In *People* v. *Del Valle,* 32 P.R.R. 143, this court declared that the section as amended establishes two ways of committing the offense; one through gross negligence and the other through carelessness, and either charge is sufficient.

In the complaint herein it is alleged that due to the slight prudence and circumspection which defendants exercised in going upon a siding, they wilfully caused the engine to collide

with the automobile driven by Prudencio Sánchez Vélez. We think, that within this averment, proof might be made of the gross negligence or carelessness mentioned in section 328 of the Penal Code. In order to understand to what degree the care and circumspection were lacking, it is necessary to consider the facts. It all depends on the evidence. The care and circumspection may be so slight, and exercised to such a limited extent, that it may constitute gross negligence. The averment is sufficient. It is incumbent on the court to weigh the evidence and to determine whether or not, within such an averment, there has been gross negligence or carelessness, or whether any of the modalities of the crime has been proved.

In the *Enciclopedia Jurídica Española,* vol. 18, p. 517, gross negligence (*imprudencia temeraria*) is defined thus: "Want of foresight as to the more natural and immediate consequences of one's own acts capable of producing injury to persons or things. Where such injury occurs, criminal responsibility arises from the gross negligence; for even though malice or criminal intent be lacking from the performance of the wrongful act, the person grossly negligent reveals himself as a dangerous individual, of manifest unreliability, in whom reeducation of his attentive and associative powers, which are the origin of his psychophysical defect, becomes necessary through punishment."

The American decisions are in accord with this definition. Lack of foresight does not necessarily imply its absolute and complete absence, but merely the lack of that foresight required under the circumstances.

It was also alleged that the defendants wilfully caused the engine to collide with the automobile. In a negligently executed act, there is in fact no intervention of the will; but if the degree of care exercised is slight, or the negligence is of such a character as to amount to gross negligence, then, from a legal standpoint, the act has the same effect as if

it had been wilfully done. An act produced by the will is positive in character, while an act resulting from mere negligence is negative. Both are incompatible; but without doing violence to logic and still in the field of compatibility, it may be said that a person who acts negligently and carelessly in the performance of acts requiring foresight and prudence to avoid injury to third persons, to the extent of incurring in wanton or gross negligence, is voluntarily executing a dangerous and reprehensible act with knowledge of the consequences that may result from his negligence or thoughtlessness. It is alleged in the complaint that due to the slight prudence and care on their part, the defendants wilfully caused the engine to collide with the automobile. It is thereby averred that their prudence and care were so slight that it resulted in an accident occasioned by a negligent act voluntarily executed.

In the case of *Helme* v. *Great Western Milling Co.*, 185 Pac. 510, decided by the District Court of Appeal, Second District, Division 2, of California, gross negligence is defined as follows:

"(4) 'Gross negligence' is the entire failure to exercise care, or the exercise of so slight a degree of care as to justify the belief that there is an entire indifference to the interest and welfare of others. It is that entire want of care that raises a presumption of conscious indifference to consequences. It implies a total disregard of consequence without the exertion of effort to avoid it . . . While, in a case of gross negligence, various terms have been used to express the mental state of the actor, the idea attempted to be conveyed seems to be that the act done or omitted to be done was done or omitted wilfully and intentionally. 20 R.C.L. 23. In *Astin* v. *Chicago, etc., Co.*, supra, the Wisconsin Supreme Court says that 'gross' negligence is not characterized by inadvertence, but 'by an absence of any care on the part of a person having a duty to perform to avoid inflicting an injury to the personal or property rights of another, by recklessly or wantonly acting or failing to act to avoid doing such injury, evincing such an utter disregard of consequences as to suggest some degree of intent to cause such injury."

In *Shumacher* v. *St. Louis & S. F. R. Co.,* 39 Fed. 174, 177, the conduct constituting an absence of care was considered, and with reference to gross negligence, it was said:

"An act characterized by a high degree of negligence, or, as it is familiarly called, 'gross negligence,' is the counterpart of a wilful act. When the danger is very great, and the care to prevent disaster is very slight, or none at all, the neglect of a party becomes a wilful act in law. The highest duty of man is to protect human life, or the person of a human being. That duty is never performed so as to escape responsibility until all possible care, under the circumstances, is exercised. The law says if the management of these cars, after the plaintiff was discovered on one of them in a position of danger in time to have prevented the injury, was characterized by gross and reckless negligence, it is equivalent to intentional mischief."

The defendants maintain that the complaint contains no specific allegation to the effect that the defendants were wholly or partially in charge of dispatching or directing the movements of the aforesaid engine. It is alleged in the complaint that the defendants, while working respectively as engineer, switch tender, and stoker of locomotive No. 5, in going upon the siding, wilfully caused the engine to collide with the automobile. This allegation, at least in so far as it concerns the engineer, is sufficient to support the charge. It is the engineer who directs and operates the engine. A person who works as an engineer, and who discharges the usual and proper duties of his trade, is controlling and directing the movements of the engine on which he works. Such is not the case as regards the stoker. From his functions one can not infer that he has any intervention in the control or operation of the engine and there is no allegation in the complaint that might serve as a basis for establishing his responsibility within the provisions of section 328 of the Penal Code.

It is well to bear in mind that the complaint was presented by an insular policeman and not by a prosecuting attorney. This court has repeatedly held that the same strictness is

not required in complaints presented in the inferior courts charging misdemeanors as in the informations filed in the district courts charging felonies. *People v. Cordero,* 27 P.R.R. 305; *People v. Aranda,* 12 P.R.R. 302; *People v. Bonilla,* 13 P.R.R. 41; *People v. Fontana,* 16 P.R.R. 626; *People v. Muñoz,* 22 P.R.R. 356; *People v. Ferrer,* 43 P.R.R. 945.

The complaint, as drawn, does not set forth facts sufficient to charge an offense against the stoker or the switch tender, who was acquitted by the district court. As regards the engineer, if the allegations of the complaint are supported by the evidence, the judgment of the district court must be affirmed.

The appellants urge that the original intention of section 328 was to include only passenger vehicles, and that the character of the vehicle should be alleged in the complaint, which vehicle must be one of those enumerated in said section. The defendants further say that in the instant case a locomotive is mentioned, which is not one of the vehicles specified in section 328, nor is it an engine used for the transportation of passengers. We do not agree with the interpretation placed by the appellants upon the aforesaid section. According to the latter, where through gross negligence or carelessness, one of the specified vehicles is suffered or caused to collide with another car, etc., the person wholly or in part charged with the duty of dispatching or directing the movements of said vehicle shall be criminally liable therefor. In the instant case it is alleged in the complaint that as a result of the collision, the automobile was completely destroyed and the passengers injured, some seriously and others slightly. The purpose of the statute is not to protect exclusively the passengers traveling on the vehicle that occasions the collision, but also those who are traveling on the one collided with, and any other person who may suffer the loss of his life or limb in consequence of the collision. The appellants maintain that section 328 refers

exclusively to passenger trains or to vehicles transporting passengers. In the law mention is made of a railroad car, locomotive, train, automobile, steamboat without stating that these must be devoted to the transportation of passengers and it does not seem reasonable to give such a restrictive interpretation to a statute which was enacted for the purpose of punishing acts of gross negligence or carelessness, which may cause the loss of life or bodily injury.

The defense lastly maintains that the lower court erred in weighing the evidence. The accident occurred at a siding known as "Sanabria," which crosses highway No. 28 between Naguabo and Juncos. From the Pasto Viejo Central to the Juncos Central there is a main railroad track which, at its starting point in the Juncos Central, lies at some distance from the highway which it approaches gradually until it runs parallel thereto. The sidetrack begins at some 55 meters from said highway which it crosses passing into an alley that, judging from the map offered in evidence by the defendants, has a length of about 200 meters. The defendant engineer Juan Telmaín Escalera testified that he left the Juncos Central with his engine and entered upon the Sanabria siding crossing the highway where he left Amalio Rivera so that the latter should signal with a red flag when said defendant blew the whistle. The locomotive was pulling a car used to carry coal, and which the witness designated as tender. According to the testimony of said defendant, he entered the sidetrack and crossed the highway in order to get some wagons, thus proceeded down the alley for a distance of 75 or 100 meters near a train where he hitched the railroad cars to the engine. From that place he backed up to reach the starting point. It was on his return and while crossing the road for the second time that the accident occurred. When he entered the sidetrack and crossed the road the engine was in front and the tender behind. When he backed up after hitching the railroad cars, the engine stood between the railroad cars and the tender, with its rear toward

the highway. The witness went on to state that it was when he heard the clash which threw the tender off the track a distance of about three feet that he saw the stricken automobile. He testified that he blew the whistle four times to warn Amalio Rivera that he was going to cross; that Amalio was signalling; that while backing up he could only look at the middle of the track because there is a curve there; that when Amalio heard the whistle he signalled him to proceed unto the highway; that he blew the whistle at about 15 meters from the grade crossing; that he did not show the flag to the policeman because the latter did not request it.

We have examined carefully the testimony of this witness because he was the one operating the engine. As stated by Rafael Delgado Márquez, an engineer and witness for the defense, and as shown by the map admitted in evidence, the public road is absolutely straight. A person standing at the grade crossing could see at a long distance any automobile that was approaching. The accident occurred in the daytime, at about three o'clock in the afternoon. If, as the engineer testified, Amalio Rivera was left standing in the highway and attended to his assigned task, he necessarily had to see the oncoming automobile. The engineer testified that he blew the whistle at about 15 meters from the grade crossing. No matter how slowly the locomotive may have been traveling, this distance is entirely too short to warn of an approaching train. Such warning must be opportunely given, in order that it may be effective in avoiding any accident. It must be borne in mind that, according to the evidence, there was sugar cane planted on either side of the track near the highway, that the cane was ready to be cut, and that the locomotive must cross the plantation before reaching the highway. It has not been proved that Amalio Rivera signalled at all. He was not called as a witness by the defense, despite the fact that his testimony was very important; the defense instead was content with the testimony of

the engineer. The testimony of Pedro Roig, employee in charge of the trains of the defendant, was offered to impeach that of the chauffeur Prudencio Sánchez Vélez, who was driving the car against which the engine collided. This witness testified that immediately after the collision he asked the chauffeur of the automobile whether he had seen the flagman, and that the latter answered that "really there was a man with a small red flag in his hand but that, mistaking him for a passenger who was asking him to stop, he paid no attention to him; then suddenly he saw the engine, but, due to the momentum of the automobile, he found it impossible to stop it." Chauffeur Prudencio Sánchez testified that he did not speak with Pedro Roig and denied the declarations imputed to him. The *Fiscal* claims attention to the testimony of the policeman, José R. Betancourt, who stated that soon after the accident he asked the defendants whether they had a red flag, and that they answered: "We don't have it, but all the engines have flags." The *Fiscal* overlooks the fact that this part of the testimony of the policeman Betancourt was stricken from the record on motion of counsel for the defense who then considered it irrelevant, and we can not therefore take it into consideration. This testimony, however, is unnecessary. The lower court, by rendering its judgment of conviction, shows that it gave no credit to the testimony of defendant Juan Telmaín Escalera, and we think that its conclusion is not erroneous.

It has been established by the evidence of both parties that the engine was running backward over the highway when the accident occurred. It was the duty of the engineer to proceed cautiously and to take all the precautions necessary in cases of this character to avoid accidents. In the case of *Carreño* v. *Russell & Co.*, 32 P.R.R. 248, this court held:

"An examination of the record shows that the plaintiff's chauffeur was not really as diligent as he should have been, but it also shows gross negligence on the part of the defendants in that the operator had his back to the road on entering the grade crossing,

that the chains were not up and that as they were not in place he did not ascertain whether some person, animal or vehicle was crossing the track at that moment."

We copy from the syllabus approved by the Supreme Court of Minnesota in the case of *Klotz* v. *Winona & St. P. R. Co.*, 71 N. W. 257:

"When a railroad car and engine are being pushed backward over a highway crossing, extra precautions should be used by the railroad company to avoid injury to travelers lawfully upon the track; and this rule is especially applicable where the crossing is so used infrequently at irregular times as a side track for switching purposes."

In said case, the Supreme Court of Minnesota cites Lawson's work on "Rights, Remedies and Practice at Law," vol. 3, section 1187, where the rule is laid down that "when the train is backing, or cars are being pushed by a locomotive, extra precautions must be used to avoid injuries at crossings," and adds:

"We cite these authorities as showing to what extent some eminent courts have gone in holding railroad companies to a great degree of diligence and care in running engines and cars backward over highway crossings in populous cities or villages. In Elliott on Railroads (volume 3, sec. 1162) he states that there are many cases in which but one reasonable inference can be drawn, and the court can say as a matter of law that it is negligence to back a train over a crossing where people are likely to be in a populous city, without warning or other precautions; but he thinks it going too far to say that backing cars is negligence per se under any and all circumstances, and that it is not negligence if proper precautions are taken; and whether such precautions have been taken by the company, and it has used reasonable care under the circumstances, is generally a question of fact for the jury."

In the case of *Bowles* v. *Chesapeake & O. R. Co.*, 57 S. E. 131, 132, the Supreme Court of Appeals of West Virginia expressed itself as follows:

"When a train is backing cars over a street or road in the night, is not diligence demanded? It is much more dangerous than when

the engine is ahead. We would be unwilling to say that the statutory warning by bell or whistle would be adequate in the case of a train reversed and backing over a crossing. That is designed for a train having the locomotive in advance. The warning is then on the first car approaching; whereas, when the train is reversed, it is quite different. The distant bell or whistle would then furnish little safety. Wood on Railroads, section 1517, says: 'It is not necessarily negligence on the part of the railroad company to back and switch cars over a highway crossing, nor to make "flying switches" there. It has a perfect right to make such a use of that part of the track, provided proper precautions are taken for the safety of travelers using the crossing. But as a matter of common knowledge such a practice is peculiarly dangerous, and therefore creates a duty of unusual care on the part of the company. There should be abundant warning, not only by the usual signals of bell and whistle, but there should be a flagman near the track, or a watchman on the nearest approaching car to warn travelers who are near. In this, as in other cases, the exact measure of the company's duty, and the question as to whether it has been discharged, is for the jury, though where a "flying switch" is made over a crossing without any notice being given, and no watchman or flagman posted to give warning, it may be held as a matter of law that the company was negligent.' Elliot on Railroads, section 1162, says that it has often been held that kicking or backing a car over a crossing without warning, and in the absence of a lookout, is negligence per se; that it is a true proposition in many cases, but not always. Yet he grants that, unless proper precautions are taken, it is negligence, and whether they have been taken is a jury question. This is an important matter for the safety of the public, for the preservation of human life, with which increased care or cost to a railroad company is not to be compared. The precaution must be fair and adequate in the particular case. The case of *Vance* v. *Railway*, 53 W. Va. 338, 44 S. E. 461, sustains this position."

In the above cited decisions mention is made of the precautions to be taken by railroad companies when backing or switching their trains over a grade crossing or highway. These cases show that extraordinary care should be exercised. There is no doubt that these maneuvers are extremely dangerous and that the railroad company, owner of the vehicle and the track, as well as the persons mentioned in section 328,

are bound to take all due precautions to avoid accidents. Where the conductor, engineer, brakeman, switchman, or any other person having charge wholly or in part of said vehicle, fails to take the precautions that prudence demands, and, through gross negligence or carelessness, suffers said vehicle to collide with another vehicle, or with any other object or thing, the person so acting is criminally liable according to the express provisions of section 328 of the Penal Code.

The defense lays emphasis upon the testimony of José Texidor, a witness for the prosecution, who was traveling in the automobile that collided with the locomotive. The chauffeur Prudencio Sánchez testified that he saw the locomotive for the first time just as it left the cane field; that it all happened in a moment; that the engine could not be seen because the cane covered either side; and that when he saw it he jammed the brakes ''in order to avoid the danger, but the locomotive was already there.'' The witness José Texidor testified that he saw the engine for the first time when it came out; that a few seconds elapsed; that it all happened suddenly. Later, on cross-examination by the defense, this witness testified that when he saw the engine for the first time it was at a distance of 25 or 30 feet. According to the evidence, the automobile was traveling at a speed of 25 miles per hour. The defense argues that if the automobile was traveling at that rate of speed, it could have stopped, not only within a distance of from twenty-five to thirty feet, but in five or ten feet; and that from the testimony of Texidor it may be inferred that the driver was speeding and attempted to go over the crossing without stopping the car, or that if it was true that said automobile was traveling at twenty miles per hour, they could not stop it because the brakes were defective.

In our opinion these facts, as the same have been stated above, do not relieve the engineer of responsibility if the allegations of the complaint have been proved. The judgment of the lower court shows that it considered the said facts

as proved. We find that the evidence has been properly weighed and are of the opinion that the judgment appealed from should be affirmed as regards the defendant Juan Telmaín Escalera, and that stoker José de Jesús Guadalupe should be acquitted.

Mr. Justice Wolf and Mr. Justice Aldrey dissented.