## FRANK HELME, Respondent, v. GREAT WESTERN MILLING COMPANY (a Corporation), Appellant.

[1] Workmen's Compensation Act—Scope of Employment—Evidence—Finding.—In this action for damages for personal injuries sustained while attempting to replace a belt on the pulley of a bran-packing machine, while the plaintiff's evidence as to the scope of his employment was too unsatisfactory, in view of the evidence of other witnesses to the effect that it was not unusual for a bran-packer to replace the belt when it slipped off, the jury was warranted in concluding that plaintiff was acting within the scope of his duties when he undertook to put the belt back on to the pulley.

[2] Id.—Remedy of Injured Employee—When Action for Damages Maintainable.—The remedy of compensation afforded by the Workmen's Compensation, Insurance and Safety Act is exclusive of all other statutory or common-law remedies, except in the one case provided by subdivision "b" of section 12. By that subdivision it is provided that an injured employee, instead of presenting to the commission his claim for compensation as provided by the act, may, at his option, maintain in the courts an action at law against his employer to recover damages where all the three following elements coexist: (1) When the injury is caused by the employer's gross negligence or willful misconduct; (2) when the act or failure to act which is the cause of the injury is the personal act or failure to act on the part of the employer himself, or, if the employer be a corporation, on the part of an elective officer or officers thereof; and (3) when the act or failure to act which is the cause of the injury indicates a willful disregard of the life, limb, or bodily safety of the employees.

[3] Id.—Failure of Employer to Inclose Gears—Action for Damages—Essentials to Recovery—Pleading and Proof.—Where the failure to act, which is charged as the cause of the injury, was

1. What is accident arising out of, and in course of, employment within meaning of Workmen's Compensation Act, notes, Ann. Cas. 1913C, 4; Ann. Cas. 1914B, 498; Ann. Cas. 1916B, 1293; Ann. Cas. 1918B, 362; L. R. A. 1916A, 40, 232; L. R. A. 1917D, 114; L. R. A. 1918F, 896.

3. Negligence precluding recovery under Workmen's Compensation Act, note, Ann. Cas. 1913C, 17.

"Serious and willful misconduct" as affecting recovery under Workmen's Compensation Act, notes, Ann. Cas. 1916A, 790; L. R. A. 1916A, 75, 243, 355; L. R. A. 1917D, 133.

the failure to inclose certain gears in a housing, or otherwise to keep them from being exposed, to entitle the plaintiff in an action at law against the employer to recover he must allege, and, by a preponderance of the evidence, prove: (1) That defendant's failure to house the gears was of itself "gross negligence" or "willful misconduct"; (2) that the failure to house the gears was the personal failure to act on the part of an elective officer or officers of the defendant corporation as, for example, a director or directors; and (3) that such failure to house the gears indicates a willful disregard of the life, limb, and bodily safety of defendant's employees.

[4] Id.—Failure to Comply With Commission's Orders—Gross Negligence—Willful Misconduct.—Unless, by failing to house such gears, one of the elective officers of defendant thereby failed to comply with a general or special order of the Industrial Accident Commission, or with some safety requirement expressly defined and provided for by the act itself, it cannot successfully be claimed that defendant was guilty of either "gross negligence" or "willful misconduct."

[5] Id.—Gross Negligence Defined.—Gross negligence is the entire failure to exercise care, or the exercise of so slight a degree of care as to justify the belief that there is an entire indifference to the interest and welfare of others. It is that entire want of care that raises a presumption of conscious indifference to consequences. It implies a total disregard of consequences, without the exertion of effort to avoid it.

[6] Id.—Willful Misconduct Defined.—Willful misconduct means something different from and more than negligence, however gross. The mere failure to perform a statutory duty is not, alone, willful misconduct. To constitute willful misconduct there must be actual knowledge, or that which in the law is esteemed to be the equivalent of actual knowledge, of the peril to be apprehended from the failure to act, coupled with conscious failure to act to the end of averting injury.

[7] Id.—Recommendations of Engineer not Safety Orders.—Recommendations by a safety engineer representing the Industrial Accident Commission that certain changes be made in a given plant cannot be deemed the equivalent of an order made and entered by the commission itself and served on the employer, as contemplated by the Workmen's Compensation, Insurance and Safety Act.

[8] Id.—Use of Safety Devices—Absence of Orders—General Requirements of Act.—In the absence of any general or special order given and made by the commission in the mode and manner provided by the act, an employer's statutory duty, under the general requirements of the act itself, is to use such devices and safeguards as are *"reasonably* adequate" to render the place of

43 Cal. App.—27

employment safe, and to have its place of employment as free from danger to the life or safety of its employees "as the nature of the employment will *reasonably* permit.".

[9] ID.—DEGREE OF CARE REQUIRED—ERRONEOUS INSTRUCTION.—In an action for damages for personal injuries sustained while attempting to replace a belt on the pulley of a bran-packing machine, the plaintiff's arm having been caught in certain gears, an instruction that "if you find from a preponderance of the evidence in this case that the plaintiff at the time of the injury was acting in the course of his employment, then, if such gears constituted a source of danger to the life or safety of the plaintiff, the defendant owed to the plaintiff the duty of providing and maintaining over the gears in question such safety devices or appliances as would tend to mitigate or prevent the danger to plaintiff from contact thereof," exacts from the defendant a greater degree of care than is required by the Workmen's Compensation, Insurance and Safety Act.

APPEAL from a judgment of the Superior Court of Los Angeles County. Louis W. Myers, Judge. Reversed.

The facts are stated in the opinion of the court.

Albert M. Norton, D. W. Boden and Haas & Dunnigan for Appellant.

H. Eugene Wassell and Jas. E. Degnan for Respondent.

FINLAYSON, P. J.—In this action for personal injuries, sustained while in defendant's employ, plaintiff, after a trial before a jury and a verdict in his favor, recovered a judgment for three thousand five hundred dollars, from which defendant appeals. The action was brought under subdivision "b" of section 12 of the Workmen's Compensation, Insurance and Safety Act of 1913. (Stats. 1913, p. 283.) Appellant complains, *inter alia,* of certain instructions given to the jury.

A few days prior to April 14, 1915, plaintiff was employed by defendant as a bran-packer. In operating the bran-packing machine, the bran-packer discharges the various kinds of grain into four holes or hoppers in the floor. The grain passes thence to a mixing-box in the floor beneath, from which it is discharged into an auger that grinds the whole mass into a mixture that is conveyed by elevator to a machine called the "bran-packer," from which it is discharged into sacks.

According to plaintiff's testimony, he was instructed to keep the feed going through the mixer, to keep the mixer running, to keep the machinery going, so that the grain would not clog. On April 14, 1915, while operating the bran-packing machine, plaintiff discovered that the grain was not feeding into the hoppers. Upon going into the basement to discover the cause of the trouble, he found that the screw into which the hoppers fed was clogged, and that that had caused the belt that operates the screw to come off the pulley. In attempting to replace this belt, plaintiff's arm was caught in certain gears, and the injury of which he complains was thus inflicted. The gears which caused the injury were not housed, but were entirely exposed. They were about five feet eight inches above the basement floor, and located within a few inches of the pulley that controls the belt which operates the auger in the mixer. The belt, when in operation, was about five feet four inches above the floor. The basement was poorly lighted, in consequence of which the presence of the gears could not readily be detected.

[1] Appellant urges that the evidence fails to show that respondent was acting within the scope of his employment when he undertook to replace the belt. Respondent's evidence on this branch of his case is none too satisfactory, but, on the whole case, we think that, in view of the testimony of other witnesses to the effect that it was not unusual for a bran-packer to replace the belt when it slipped off, the jury was warranted in concluding that respondent was acting within the scope of his duties when he undertook to put the belt back on to the pulley. The most serious question in the case arises out of certain instructions given to the jury.

[2] The remedy of compensation afforded by the Workmen's Compensation, Insurance and Safety Act is exclusive of all other statutory or common-law remedies, except in the one case provided by subdivision "b" of section 12. By that subdivision it is provided that an injured employee, instead of presenting to the commission his claim for compensation as provided by the act, may, at his option, maintain in the courts an action at law against his employer to recover damages where all the three following elements coexist: (1) When the injury is caused by the employer's gross negligence or willful misconduct; (2) when the act or failure to act which is the cause of the injury is the personal

act or failure to act on the part of the employer himself, or, if the employer be a corporation, on the part of an elective officer or officers thereof; and (3) when the act or failure to act which is the cause of the injury indicates a willful disregard of the life, limb or bodily safety of the employees.

[3]  Here the failure to act, which is charged as the cause of the injury, was the failure to inclose the gears in a housing, or otherwise to keep them from being exposed. Therefore, to entitle plaintiff to recover in this action he must allege, and, by a preponderance of the evidence, prove: (1) That defendant's failure to house the gears was of itself "gross negligence" or "willful misconduct"; (2) that the failure to house the gears was the personal failure to act on the part of an elective officer or officers of the defendant corporation, as, for example, a director or directors; and (3) that such failure to house the gears indicates a willful disregard of the life, limb, and bodily safety of defendant's employees.

[4]  Unless, by failing to house the gears, one of the elective officers of defendant thereby failed to comply with a general or special order of the Industrial Accident Commission, or with some safety requirement expressly defined and provided for by the act itself, it cannot successfully be claimed that defendant was guilty of either "gross negligence" or "willful misconduct."

[5]  "Gross negligence" is the entire failure to exercise care, or the exercise of so slight a degree of care as to justify the belief that there is an entire indifference to the interest and welfare of others. It is that entire want of care that raises a presumption of conscious indifference to consequences. It implies a total disregard of consequence, without the exertion of effort to avoid it. (*Reddington* v. *Pacific P. T. C. Co.*, 107 Cal. 324, [48 Am. St. Rep. 132, 40 Pac. 432]; *Coit* v. *Western Union Tel. Co.*, 130 Cal. 664, [80 Am. St. Rep. 153, 53 L. R. A. 678, 63 Pac. 83]; *Watermolen* v. *Fox River etc. Co.*, 110 Wis. 153, [85 N. W. 663]; *Astin* v. *Chicago etc. Co.*, 143 Wis. 477, [31 L. R. A. (N. S.) 158, 128 N. W. 265]; 20 R. C. L. 23.) While, in a case of gross negligence, various terms have been used to express the mental state of the actor, the idea attempted to be conveyed seems to be that the act done or omitted to be done was done or omitted willfully and intentionally. (20 R. C. L. 23.) In *Astin* v. *Chicago etc. Co., supra,* the Wisconsin supreme court says that "gross"

negligence is not characterized by inadvertence, but "by the absence of any care on the part of a person having a duty to perform to avoid inflicting an injury to the person or property rights of another, by recklessly or wantonly acting or failing to act to avoid doing such injury, evincing such an utter disregard of consequences as to suggest some degree of intent to cause such injury."

Without undertaking to state the evidence at length or to discuss it at large, let it suffice to say that unless it appears that defendant consciously violated some order of the commission or some particular safety provision of the act itself, it was not guilty of "gross" negligence, simply because it failed to house the gears with which plaintiff brought his arm in contact when attempting to replace the belt. The mere failure to keep the gears in a housing, apart from any willful disregard of some order of the commission or of some particular safety provision of the act itself, does not evince such an utter disregard of consequences as to suggest some degree of intent to cause the injury, or to justify the belief that there was a conscious indifference to consequences.

[6] "Willful misconduct" means something different from and more than negligence, however gross. The term "serious and willful misconduct" is described by the supreme court of Massachusetts as being something "much more than mere negligence, or even gross or culpable negligence," and as involving "conduct of a *quasi* criminal nature, the intentional doing of something either with the knowledge that it is likely to result in serious injury, or with a wanton and reckless disregard of its possible consequences." (*In re Burns*, 218 Mass. 8, [Ann. Cas. 1916A, 787, 105 N. E. 601].) The mere failure to perform a statutory duty is not, alone, willful misconduct. It amounts only to simple negligence. To constitute "willful misconduct" there must be actual knowledge, or that which in the law is esteemed to be the equivalent of actual knowledge, of the peril to be apprehended from the failure to act, coupled with a conscious failure to act to the end of averting injury. (*Smith* v. *Central etc. Ry. Co.*, 165 Ala. 407, [51 South. 792].)

Measured by the foregoing standard, it cannot be said that defendant was guilty of "willful" misconduct merely because it failed to house the gears, unless the housing of the gears was made a duty by some general or special order of the

Industrial Accident Commission, or by the act itself, and some one of the defendant's elective officers, with a willful disregard of the life, limb, or bodily safety of defendant's employees, having actual knowledge of the peril incident to the unhoused gears, or having what in law is equivalent to such actual knowledge, consciously failed to house the gears so as to avert injury.

Thus, then, we are brought to the question, Did the commission, by general or special order, direct the gears to be housed? Or, if it did not, what was defendant's statutory duty in that regard?

The act empowers the commission to make "general" safety orders, and "special" safety orders, after a hearing upon notice. (Secs. 57–59, Stats. 1913, pp. 307, 308.) A "general" safety order is defined as an order of the commission that applies generally throughout the state to all persons, employments, or places of employment; all other safety orders of the commission are declared to be "special" orders. (Subd. 6, sec. 51, Stats. 1913, p. 306.) The commission, without a hearing on notice, may summarily investigate any place of employment which it has reason to believe is not safe, and, after a hearing, upon such notice as it may prescribe, may enter such order as may be necessary. The order, so made and entered, must be served upon the employer. (Sec. 61, Stats. 1913, p. 308.)

[7] The evidence fails to show that any general order was ever made by the commission requiring gears, such as those that caused the injury to respondent, to be housed. Nor has our attention been called to any evidence in the record showing or tending to show that the commission ever made, entered, or served any special order requiring the gears to be encased. It is true, a safety engineer, representing the commission, went through the plant, in August, 1914, and made certain recommendations, and the same engineer, six months later, again visited the plant and checked up the things that had been done by defendant relative to a compliance with the recommendations he had made on his previous visit, with the result that he found defendant had done about one-half to two-thirds of the things that he had recommended in August, 1914. Such recommendations, however, cannot be deemed the equivalent of an order made and entered by the commission itself and served on the employer,

as contemplated by the act. It follows, therefore, that the evidence fails to show that the commission ever made or served any order requiring the gears to be housed or incased, or any other order with which defendant has neglected to comply.

In the absence of any such general or special order by the commission with respect to the gears, defendant's duty must be measured by the general requirements of the act itself.

The act requires every employer to furnish a place of employment which shall be "safe," and to furnish "such safety devices and safeguards, . . . as are *reasonably* adequate to render such . . . place of employment safe." (Sec. 52, Stats. 1913, p. 306.) It also is provided by the act that the terms "safety device" and "safeguard" shall "be given a broad interpretation so as to include any *practicable* method of mitigating or preventing a specific danger." (Subd. 9, sec. 51, Stats. 1913, p. 306.) The terms "safe" and "safety," as applied to any place of employment, are defined to mean "such freedom from danger to the life or safety of employees as the nature of the employment will *reasonably* permit." (Subd. 8, sec. 51, Stats. 1913, p. 306.)

[8] From these provisions and definitions it will be seen that, in the absence of any general or special order given and made by the commission in the mode and manner provided by the act, defendant's statutory duty, under the general requirements of the act itself, was to use such devices and safeguards as are *"reasonably* adequate" to render the place of employment safe, and to have its place of employment as free from danger to the life or safety of its employees "as the nature of the employment will *reasonably* permit."

[9] Tested by the foregoing, we are constrained to hold that certain of the court's instructions were erroneous and misleading. For example, the court instructed the jury as follows: "If you find from a preponderance of the evidence in this case that the plaintiff at the time of the injury was acting in the course of his employment, then, if such gears constituted a source of danger to the life or safety of the plaintiff, the defendant owed to the plaintiff the duty of providing and maintaining over the gears in question such safety devices or appliances as would tend to mitigate or prevent the danger to plaintiff from contact therewith." This in-

struction exacted of defendant a greater degree of care than is required by the act. Doubtless it is safe to say that the gears in question were a source of danger, just as all machinery, and, indeed, almost everything with which mankind is daily environed, is, in some degree, a potential source of danger. But the act does not require defendant to provide or maintain a place of employment that does not involve any element of danger whatever. All that is required is that the employer shall furnish a place of employment which is as free from danger to the life or safety of the employees "as the nature of the employment will *reasonably* permit." (Subd. 8, sec. 51.) Nor does the act require defendant to provide or maintain over the gears "such safety devices or appliances as would *tend* to mitigate or prevent the danger to plaintiff from contact therewith," irrespective of any other element or consideration. All that the act requires of defendant is that it provide and maintain over the gears such safety devices and appliances as are *"reasonably"* adequate to render the place of employment safe, and such as provide a *"practicable"* method of mitigating or preventing danger, and to do what is *"reasonably"* necessary to protect the life and safety of its employees. (Subd. 9, secs. 51, 52.)

After an examination of the entire cause, including the evidence, we cannot say that this misdirection of the jury did not result in a miscarriage of justice. Indeed, it is more than probable that the instructions, considered in their entirety, influenced the jury to defendant's prejudice. In the main, the instructions are too abstract. Considered as a whole, they were calculated to impress upon the minds of the jurors that, irrespective of reasonableness or practicability, it was defendant's bounden duty to incase the gears in housing, and that its mere failure to do so constituted gross negligence or willful misconduct.

Judgment reversed.

Sloane, J., and Thomas, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 1, 1919, and the following opinion then rendered thereon:

THE COURT.—In denying a hearing in this court we are not to be understood as intimating an opinion to the effect that there was sufficient evidence to support a conclusion of gross negligence or willful misconduct on the part of defendant, or on the question whether *every* failure to comply with a requirement of the Industrial Accident Commission or the statute is necessarily *gross* negligence or willful misconduct. On these questions we reserve expression of opinion.

The application for a hearing in this court after decision by the district court of appeal of the second appellate district, division two, is denied.

All the Justices concurred, except Melvin, J., who was absent.