[Civ. No. 6418. Third Appellate District.—December 28, 1940.]

JOSEPHINE MARCHI, Appellant, v. MARIO J. VIRONE, Respondent.

Henry & Bedeau for Appellant.

Charles V. Barfield and John J. Healy, Jr., for Respondent.

JONES (G. L.), J., *pro tem.*—Plaintiff, Josephine Marchi, having received serious injuries while riding as a guest in an automobile driven by defendant, commenced an action against him to recover damages, alleging wilful misconduct on his part. A jury was empaneled. At the conclusion of her case, a motion for nonsuit was made on the ground that plaintiff had failed to prove her contention of wilful misconduct, which motion was granted, and from the judgment of nonsuit she has appealed.

The proper exercise of the power of a trial court to grant a motion for nonsuit is again explained in the case of *Estate of Arnold,* 16 Cal. (2d) 573 [107 Pac. (2d) 25], citing *Estate of Flood,* 217 Cal. 763 [21 Pac. (2d) 579], in which it is said "A nonsuit or a directed verdict may be granted only when, disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of plaintiff if such a verdict were given." With that rule in mind, the evidence as presented by the plaintiff must be examined, in order to determine whether it was sufficient to support a verdict for plaintiff, had one been given in her favor by the jury.

On the evening of May 20, 1939, about 11 o'clock, the plaintiff was riding with defendant on Folsom Boulevard in Sacramento County. They had been at the Power Inn, near

Perkins, which Inn is located at the Power Line Road and Folsom Boulevard, about two miles easterly from the corner of Rodeo Way and Folsom Boulevard, this corner being within the city limits of Sacramento, and being the corner at which the accident in question occurred. Shortly after they had left the Inn, plaintiff, judging that defendant was driving around sixty miles, said to him—"it seems to me you are going a little fast, aren't you", whereupon defendant mumbled something which plaintiff could not understand, and kept on going faster. Later, as they neared a subway, she said, "Oh, please go slow", and his reply was "Oh, shut up". As they drew out of the subway, she looked at the speedometer which registered sixty-two miles an hour. She then said "Oh, for God's sake please go slow. If you are a few minutes late your mother and sister will wait for you." [The defendant desired to meet his mother and sister at the Alhambra Theater in Sacramento a little after 11 o'clock.] His reply to plaintiff's appeal was "Oh, shut up. Who is driving this car? I will go as fast as I like, and besides I don't want them to wait." When she looked at the speedometer she was sitting on the edge of the seat because she was frightened. She does not recall what happened after she looked at the speedometer. When he got mad at her he would sometimes say to her, "Shut up".

The witness Sirrine, a bus driver, on the evening of May 20th, about 11:20 o'clock P. M. was parked at 57th Street and Folsom Boulevard (about four and one-half blocks from the accident). An automobile going approximately fifty-five or sixty miles an hour passed him, and, expecting an accident, he watched it travel four or five blocks, saw it apparently skidding; saw it swerve sharply from the north to the south. About a minute later he came on down the street and saw a Buick automobile over the curb on the north side of "Folsom" and the west side of Rodeo Way, and also saw a young lady apparently unconscious lying near the store on the corner. It was raining very hard and the pavement was "definitely slippery". Folsom Boulevard is a very slippery street when wet. The defendant was examined as an adverse witness and testified that the road was wet the night of May 20th, and he knew it was slippery when wet; that he had traveled over it on numerous occasions and when it was slippery; that before reaching the subway he was traveling probably "forty, forty-five or fifty miles an hour"; that he

cut the speed when approaching the subway to thirty-five miles and kept that speed until near Rodeo Way, the commencement of a business district; that he was doing thirty-five miles when he started to skid near Rodeo Way; that the car slid off to the right and over a curb about six inches high, struck a tree (which stands four feet from the curb near the northeast corner of the intersection), the front wheel or front fender on the right side of the car hitting the tree; then the car hit a "20 mile sign" (standing about three feet from the tree) and broke the sign down; guessed it was the front part of the car that hit the sign; then the car swung around, making a complete circle on the paved part of the boulevard, and, moving sideways, went to the north*west* corner of the intersection (over another six inch curb) struck an arterial stop sign with the rear bumper (the stop sign being about forty feet from the "20 mile" sign) ; then struck a tree with the right front wheel or fender (tree being about twelve feet from the stop sign) ; then bounced back probably four feet, coming to a stop partly on the sidewalk and partly on the street. (The statements given above in parentheses are from the testimony of the surveyor.) Defendant further testified that when he hit the tree just before the car stopped, he "went over" in the back seat; that plaintiff was in the back seat before him. Photographs exhibited in evidence of the driver's side and the rear of the car show a badly damaged automobile. It was shown by other evidence that Folsom Boulevard from Rodeo Way to the easterly city limits is constructed of black asphaltum.

We now reach the question to be here decided—is the evidence as heretofore set out sufficiently substantial to have justified the submission of the case to the jury and to have justified a verdict in favor of plaintiff, had the jury found one? In other words, is the evidence here presented of such a nature that a verdict finding the defendant guilty of wilful misconduct, would lack the necessary legal support?

In the case of *Robertson* v. *Brown,* 37 Cal. App. (2d) 189 [99 Pac. (2d) 288], decided February 7, 1940, and hearing in the Supreme Court denied March 29th, the doctrine of wilful misconduct is again stated after its announcement in many decisions of both the Supreme and Appellate Courts of the state. This exposition is in part as follows: "Wilful misconduct implies at least the intentional doing of something either with a knowledge that serious injury is a probable (as

distinguished from a possible) result, or the intentional doing of an act with a wanton and reckless disregard of its possible result.''

In *Norton* v. *Puter,* 138 Cal. App. 253 [32 Pac. (2d) 172], cited with approval in *Porter* v. *Hofman,* 12 Cal. (2d) 445 [85 Pac. (2d) 447], wilful misconduct is thus defined:

''Wilful misconduct depends upon the facts of a particular case and necessarily involves deliberate intentional or wanton conduct in doing or omitting to perform acts, with knowledge or appreciation of the fact on the part of the culpable person that danger is likely to result therefrom. Wilfulness necessarily involves the performance of a deliberate or intentional act or omission regardless of the consequences.''

It should be particularly noted that the defendant Virone is not charged with driving at an excessive speed as the sole basis for the complaint of wilful misconduct, but it is the contention of plaintiff that the evidence shows the driving by defendant at great speed and under conditions which would bring his conduct within the definition as given. If the jury would have been justified in this case in finding that the defendant, with full knowledge of the slippery condition of the boulevard, and at a speed of at least fifty-five miles an hour, approached the ''20 mile'' sign at the intersection; that he had driven over the street on numerous times and knew the necessity of reducing his speed before entering the business district; that the plaintiff had twice pleaded with him to slow down, but was answered in a way that indicated an angry man, can the conclusion well be avoided that the jury should have been permitted to determine whether or not defendant was guilty of wilful misconduct as defined, and that a verdict of guilty would be deemed supported by the evidence? In several cases, based on alleged fast driving over wet pavements, the courts have held that the conditions were not such as would constitute wilful misconduct on the part of the drivers. Lack of knowledge of a slippery condition of the pavement, as in the case of *Spencer* v. *Scott,* 39 Cal. App. (2d) 109 [102 Pac. (2d) 554], or the car proceeding at a much less speed than was the car in the instant case, have been facts considered by the courts, in some instances in reaching their conclusions against the claim of wilful misconduct. Here, however, we have the situation of speed at fifty-five miles or more, combined with a knowledge on the part of the driver of the slippery condition of the highway, and, it may

reasonably be inferred, with the further knowledge on his part that he was approaching a district which would necessitate a reduction in speed.

This knowledge of a slippery pavement made unnecessary for him the cautionary signs, such as ''Slow, Slippery Pavement''; ''Slippery When Wet'', frequently placed at particular spots on our highways. To travel at great speed over such a pavement, with knowledge of its dangerous condition, may well be characterized of itself as a deliberate act done with appreciation of the fact that danger is likely to result therefrom, and if, in addition to the knowledge of the probable result of serious injury, there is displayed a feeling of anger toward an accompanying guest, a jury would be justified in finding ''the intentional doing of an act with a wanton and reckless disregard of its possible result.''

The case of *Chandler* v. *Quinlan*, 25 Cal. App. (2d) 646 [78 Pac. (2d) 235], is a pertinent one to be considered in connection with the subject here under discussion.

It therefore appears to us in this case that; ''giving to plaintiff's evidence all the value to which it is legally entitled'', the question of the alleged misconduct of defendant should have been allowed to go to the jury.

The judgment of nonsuit is reversed.

Thompson, J., and Pullen, P. J., concurred.

A petition for a rehearing was denied on January 27, 1941, and respondent's petition for a hearing by the Supreme Court was denied on February 24, 1941.