[Civ. No. 12413. First Dist., Div. One. Oct. 29, 1943.]

JOEL WOODSON et al., Appellants, v. BEVERLY EVERSON, Respondent.

Chas. H. Epperson for Appellants.

Honey & Mayall for Respondent.

KNIGHT, J.—Plaintiffs appeal from an adverse judgment in an action to recover damages for personal injuries sustained by them while riding as guests in defendant's automobile. The cause was tried by the court without a jury, and the issue involved was whether defendant was guilty of wilful misconduct. The trial court found against plaintiffs on that issue, and as sole ground for reversal they contend that the evidence established as a matter of law that the defendant was guilty of wilful misconduct and that therefore they

were entitled to recover damages under the "guest law" (sec. 403, Veh. Code.)

The accident occurred about 11 o'clock at night on 'April 12, 1941, on the main Los Gatos-Santa Cruz highway. The defendant Everson was driving the car, and the other occupants thereof were the plaintiffs. One of the plaintiffs, Miss Nelson, was riding in front with the defendant, and the other two, Woodson and Miss Egan (who subsequent to the filing of the action and prior to trial became Mrs. Woodson) occupied the rear seat. They were all residents of Stockton, and were en route to Los Angeles, but were going by way of Santa Cruz to attend a dance. They had been friends for several months, and on previous occasions had taken social trips together, around Stockton and Sacramento. On the night of the accident they left Stockton about 7:30 o'clock in the evening, stopped once in Livermore and again outside of San Jose, and the accident happened when they reached a point about half way between Los Gatos and Santa Cruz. The car left the road at a curve, turned over and rolled down the bank for approximately 200 feet, and all three plaintiffs were injured. The highway has four lanes, is well surfaced, and has broad, sweeping curves; and it was a clear, dry, moonlight night. There had been several slides along the highway, which were marked by warning signs and red lanterns, and up to the point of the accident they had passed six or more of them. Due to the injuries Miss Nelson received she was unable to tell what happened, and Woodson stated that he was not watching the road at the time the accident occurred. The defendant claimed that the accident was due to the fact that he had been blinded by the headlights of a car approaching in the opposite direction. In this regard he testified that he had not driven over the highway before, and that he was driving in the center lane to the right of the double line; that he saw a car approaching a block away, coming with bright headlights, so he "started pulling to the right . . . to pull away from it," and that as the oncoming car came closer the lights thereof blinded him; that immediately his car hit loose gravel, turned over and went over the bank on the right side; that he had been watching the white lines, but as the car approached from the opposite direction he watched the car lights and could not see the white lines because the lights blinded him; that when he went over the bank he was traveling 45 or 50 miles an hour. Miss Egan testified that at the time of the accident defendant was trav-

eling at least 60 miles an hour; that she was watching the road but did not remember any particular car approaching with headlights especially bright; that it seemed to her that they "just went off into space and started to roll."

During the early part of the trip, over the Altamont Pass and on the Mission San Jose grade, the defendant drove at an average speed of 55 miles an hour, without protest from the plaintiffs, and the same is true of prior trips made by the parties. However, testimony was given by two of the plaintiffs concerning two incidents they claimed occurred on the road between San Jose and Los Gatos, along which defendant traveled about 55 miles an hour. It is a two lane highway, and two of the plaintiffs testified that at one point defendant accelerated his speed and attempted to pass another car traveling in the same direction, but on account of oncoming traffic was unable to do so; that thereupon he applied the brakes suddenly and with full force, and swung back into the line, barely avoiding a collision with the approaching traffic; that at that time Woodson asked defendant to slow down. Later on, while making a right angle turn "fairly fast" defendant "slammed" on the brakes and the rear end of the car skidded, almost side-swiping an oncoming truck. Woodson and Miss Egan testified that after this incident happened they asked defendant if he would let Woodson drive, but that the only response made by defendant was that he "guessed" he made that curve too fast; that he made no comment as to Woodson driving. Defendant denied any knowledge of the first incident, and as to the second he testified that after it happened Miss Egan remarked that they were going too fast around the curve; that he replied "I guess so" but that he did not remember anything being said about Woodson driving.

We are of the opinion that the conclusion reached by the trial court that the facts failed to establish a case of wilful misconduct under the guest law is not at variance with the settled law of this state, as declared by the decisions of the reviewing courts. "The most acceptable definition of wilful misconduct [as that term is employed in Section 403 of the Vehicle Code]," says the Supreme Court in *People* v. *Young*, 20 Cal.2d 832 [129 P.2d 353], "is stated in *Howard* v. *Howard*, 132 Cal.App. 124, 129 [22 P.2d 279], as follows:

" 'But wilful misconduct as used in this statute means neither the sort of misconduct involved in any negligence nor

the mere intent to do the act which constitutes negligence. Wilful misconduct implies at least the intentional doing of something either with a knowledge that serious injury is a *probable* (as distinguished from a possible) result, or the intentional doing of an act with a wanton and reckless disregard of its *possible* result.' (See, also, *Porter* v. *Hofman,* 12 Cal.2d 445 [85 P.2d 447]; *Parsons* v. *Fuller,* 8 Cal.2d 463 [66 P.2d 430].) ''

In *Porter* v. *Hofman,* 12 Cal.2d 445 [85 P.2d 447], which will be noted is another late case, the court cited and quoted from earlier decisions, among them being *Parsons* v. *Fuller,* 8 Cal.2d 463 [66 P.2d 430], and the court there said: ''In *Parsons* v. *Fuller, supra,* at page 468, this court approved the following definitions of wilful misconduct:

'' 'Wilful misconduct is defined in the case of *Norton* v. *Puter,* 138 Cal.App. 253 [32 P.2d 172], . . . as follows:

'' ' ''Wilful misconduct depends upon the facts of a particular case, and necessarily involves deliberate, intentional, *or wanton* conduct in doing or omitting to perform acts, with knowledge or appreciation of the fact, on the part of the culpable person, *that danger is likely to result therefrom.* (*Helme* v. *Great Western Milling Co.,* 43 Cal.App. 416 [185 P. 510]; *Olson* v. *Gay,* 135 Cal.App. 726 [27 P.2d 922]; *Walker* v. *Bacon,* 132 Cal.App. 625 [23 P.2d 520]; *Howard* v. *Howard,* 132 Cal.App. 124 [22 P.2d 279].) Webster's New International Dictionary, page 1379, defines 'Misconduct' as 'wrong or improper conduct; bad behavior; unlawful behavior or conduct, malfeasance.' (40 C.J., p. 1221.) Wilfulness necessarily involves the performance of a deliberate or intentional act or omission regardless of the consequences. In *Helme* v. *Great Western Milling Co., supra,* it is said: ' ''Wilful misconduct'' means something different from and more than negligence, however, gross. The term ''serious and wilful misconduct'' is described by the Supreme Judicial Court of Massachusetts as being something ''much more than mere negligence, or even gross or culpable negligence'' and as involving ''conduct of a *quasi* criminal nature, the intentional doing of something either with the knowledge that it is likely to result in serious injury or with a wanton and reckless disregard of its possible consequences.'' (*In re Burns,* 218 Mass. 8 [Ann. Cas. 1916A 787, 105 N.E. 601].) The mere failure to perform a statutory duty is not alone, wilful misconduct. It amounts only to sim-

ple negligence. To constitute "wilful misconduct" there must be actual knowledge, or that which in the law is esteemed to be the equivalent of actual knowledge, of the peril to be apprehended from the failure to act, coupled with a conscious failure to act to the end of averting injury. (*Smith* v. *Central etc. Ry. Co.,* 165 Ala. 407 [51 So. 792].)' " ' To this must be added the element included in the definition approved in *Meek* v. *Fowler,* 3 Cal.2d 420, 425 [45 P.2d 194], and cases following it, of actual knowledge or its equivalent that an injury to a guest will be a probable result."

In *Meek* v. *Fowler,* 3 Cal.2d 420 [45 P.2d 194], the court also cites and quotes from the same earlier decisions. In doing so the court says: "The case of *Howard* v. *Howard,* 132 Cal.App. 124, 128 [22 P.2d 279], after defining gross negligence as set forth in *Krause* v. *Rarity,* 210 Cal. 644 [293 P. 62, 77 A.L.R. 1327], and what is meant by wilful misconduct as set forth in *Helme* v. *Great Western Milling Co.,* 43 Cal.App. 416 [185 P. 510], declares that ' "The mere failure to perform a statutory duty is not, alone, wilful misconduct. It amounts only to simple negligence. To constitute 'wilful misconduct' there must be actual knowledge, or that which in the law is esteemed to be the equivalent of actual knowledge, of the peril to be apprehended from the failure to act, coupled with a conscious failure to act to the end of averting injury."

" 'While the line between gross negligence and wilful misconduct may not always be easy to draw, a distinction appears from the definition given in that gross negligence is merely such a lack of care as may be presumed to indicate a passive and indifferent attitude toward results, while wilful misconduct involves a more positive intent actually to harm another or to do an act with a positive, active and absolute disregard of its consequences. It seems clear that in excluding all forms of negligence as a basis for recovery in a guest case, the legislature must have intended that to permit a recovery in such a case the thing done by a defendant must amount to misconduct as distinguished from negligence and that this misconduct must be wilful. While the word "wilful" implies an intent, the intention referred to relates to the misconduct and not merely to the fact that some act was intentionally done. In ordinary negligence, and presumably more so in gross negligence, the element of intent

to do the act is present and any negligence might be termed misconduct. But wilful misconduct as used in this statute means neither the sort of misconduct involved in any negligence nor the mere intent to do the act which constitutes negligence. Wilful misconduct implies at least the intentional doing of something either with a knowledge that serious injury is a *probable* (as distinguished from a possible) result, or the intenional doing of an act with a wanton and reckless disregard of its *possible* result.'

"Such intent and knowledge of probable injury may not be inferred from the facts in every case showing an act or omission constituting negligence for, if this were true, any set of facts sufficient to sustain a finding of negligence would likewise be sufficient to sustain a finding of wilful misconduct. As has been repeatedly declared, ' "wilful misconduct" means something more than negligence—more, even, than gross negligence.' (*North Pac. S. S. Co.* v. *Industrial Acc. Com.*, 174 Cal. 500, 502 [163 P. 910]; *Kastel* v. *Stieber*, 215 Cal. 37, 47 [8 P.2d 474].)"

█ In deciding the present case the trial judge expressed his conclusions in a letter addressed to counsel for the respective parties, a copy of which is presented as an appendix to appellants' opening brief. As will be seen therefrom, the trial judge was doubtless of the opinion that the evidence would justify a finding of negligence, but not of wilful misconduct. In part he said: "It appears that the defendant in the above entitled case was guilty of negligence but not wilful misconduct. Although the highway was wide, his speed was dangerous, but it cannot be said that he was wanton or that he was utterly indifferent to the consequence to himself or his guests. There was no suggestion in the evidence that the driver had been drinking or that he was guilty of an act sometimes referred to as 'showing off.' He merely took a chance in the belief that he was capable of negotiating the turns in the highway, and his failure so to do must be attributed to carelessness." In view of the facts hereinabove narrated, it cannot be said that the trial court's conclusions are wanting in evidentiary support, and'that being so this court would be wholly unwarranted in holding as a matter of law, contrary to the trial court's findings, that defendant was guilty of wilful misconduct.

█ Plaintiffs contend in effect that it appears from the

views expressed by the trial judge in his letter that in deciding the issue of wilful misconduct he took into account only the matter of the speed at which defendant was operating his car at the time of the accident, and overlooked "defendant's failure to watch the edge of the road, his disregard of the dangerous condition of the highway and the amount of the traffic, his failure to yield the wheel to Woodson upon the unanimous vote and demand of his guests." It will be noted, however, from reading the entire letter that the trial judge gave careful consideration to all elements which might have had any tendency to establish wilful misconduct. In answer to the specific elements mentioned by plaintiffs it may be pointed out that according to defendant's explanation of the cause of the accident, his failure to watch the edge of the road at the moment thereof was because he was blinded by the bright headlights of a car approaching in the opposite direction. In those circumstances, and since he was not familiar with the highway, he was doubtless guilty of negligence in failing to reduce his speed upon observing the approach of the other car; but as already pointed out, even gross carelessness does not of itself constitute wilful misconduct. Nor can it be said that the evidence shows that the highway was in a dangerous condition. It is true, there had been several slides, but admittedly the presence thereof had nothing whatever to do with the cause of the accident. Furthermore, fairly construed the evidence does not show that any demand was made upon the defendant that he let Woodson drive the car. According to the testimony given by two of the plaintiffs it had been so suggested, but this occurred between San Jose and Los Gatos, which was some time before the party started over the broad, four lane highway running from Los Gatos to Santa Cruz. ▉ Therefore in the final analysis it would appear that the accident was caused by the defendant's carelessness in driving his car at an excessive rate of speed, at night, over a highway with which he was not familiar, and in failing to reduce his speed upon observing the approach of the car with the blinding lights.

An examination of the cases cited and relied on by plaintiffs in support of the appeal shows that they are obviously not here controlling. In *Marchi* v. *Virone,* 42 Cal.App.2d 124 [108 P.2d 469], the appeal was from a judgment of non-

suit, and the facts of the case were entirely different from those here presented. There the accident happened within the city limits of Sacramento, in a 20 mile an hour zone, and the defendant was traveling 55 to 60 miles an hour on a wet, slippery street. In reversing the judgment of nonsuit it was held that the evidence was such as would have supported a finding of wilful misconduct and that therefore the issue should have been submitted to the determination of the jury. In *Rawlins* v. *Lory*, 44 Cal.App.2d 20 [111 P.2d 973], there was evidence not only of excessive speeding, but of "skylarking," and a knowledge of the absence of any brakes. The trial court found from all the facts that there was wilful misconduct, and in affirming the judgment the reviewing court merely held that the evidence was sufficient to support the judgment. In *Van Fleet* v. *Heyler*, 51 Cal.App.2d 719 [125 P.2d 586], the plaintiffs, as here, were the appealing parties, but they did not contend, as do these plaintiffs, that as a matter of law the evidence established a case of wilful misconduct. Their whole claim of error was directed against the instructions to the jury, and the defendant contended that even though the instructions were erroneous they were not prejudicial for the reason that the evidence wholly failed to establish a case of wilful misconduct. On the appeal it was held that the evidence would have been legally sufficient to support a finding of wilful misconduct if the jury had seen fit so to find; that therefore the instructions being erroneous were prejudicial; and the reversal was placed on that ground. Moreover, as said by the court in *Norton* v. *Puter*, 138 Cal.App. 253 [32 P.2d 172], "Wilful misconduct depends upon the facts of a particular case," and a comparison of the facts of the Van Fleet case with those here presented shows that they are essentially different.

The judgment is affirmed.

Ward, J., concurred.

PETERS, P. J.—I concur, but do so on the sole ground that the evidence, and the reasonable inferences therefrom, support the finding that it is not true that defendant was guilty of wilful misconduct. I disagree with the majority opinion insofar as it holds or implies that a contrary finding would not be supported by the evidence. I am of the opinion

that a finding of wilful misconduct, had such a finding been made, would have been amply supported by the record. Under the rules laid down in the many cases cited in the majority opinion, if the defendant is guilty of performing an intentional act with a wanton and reckless disregard of its possible result, he is guilty of wilful misconduct. On the other hand, if the act was performed negligently, wilful misconduct does not exist. In the present case the evidence, as fully recounted in the majority opinion, and the reasonable inferences therefrom, support either conclusion. The trial court, in the exercise of its proper fact finding powers, weighed the evidence and found in favor of defendant. In my opinion, the case presents nothing more than a situation where the evidence, and the reasonable inferences therefrom, are in conflict. That being so, the finding of the trial court is conclusive on this court.

Appellants' petition for a hearing by the Supreme Court was denied December 27, 1943.