[Civ. No. 14502.   Second Dist., Div. One.   July 25, 1944.]

JAMES I. BARNES CONSTRUCTION COMPANY (a Co-partnership), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and MABEL RAWDON, Respondents.

Macdonald, Wallace, Cashin & Arrington for Petitioner.

Everett A. Corten and R. C. McKellips for Respondents.

YORK, P. J.—The petitioning employer seeks the review and annulment of an award of additional compensation which was granted on the finding that the death of the employee, Byron C. Rawdon, was caused by the employer's serious and wilful misconduct.

The employee Rawdon met his death while employed by petitioner copartnership as a carpenter in the construction of a Lighter-than-Air Base near Santa Ana, California. The award herein was made after three hearings were had, at which the witnesses used a model and several drawings in an attempt to describe the construction project and the circumstances surrounding the accident, and constantly made reference to "here," "there," "this side" and "that direction," etc., without other identification of the points referred to, with the result that the transcript has proved rather inadequate as a basis from which to make a reliable summary of the evidence. However, aided by the petition for writ of review and the return thereto, it appears that the project involved the construction of two giant hangars near Santa Ana to be used to house dirigibles for the United States Navy. Decedent was working on one of these hangars, the sides of which were to be built of concrete. At the time of the accident, decedent had completed the placement of the topmost of the wooden frames, called a soffit, in which concrete was to be poured to form the sustaining beams or uprights supporting the semicircular roof of the hangar which was 185 feet in height. This soffit, 36 inches high, 30 inches wide, 21 feet long and 20 feet from the ground, had been lifted into place by a crane. Seventy-two of such forms had been completed at the time in question. After the soffit was in place, petitioner constructed a scaffolding over each end thereof, and corbels (small protrusions from the finished concrete beam to support another beam extending at right angles to the main beam and connecting the various beams with one another) were then being built on each side of the soffit. Two men were assigned to each end of the soffit for the purpose of constructing these corbels. Decedent was one of the two men

assigned to construct the corbels on the slope, or outside end of the beam. The corbels were constructed low on the beam, therefore, in performing a portion of the work, it was necessary for the carpenters to sit on the scaffold. Petitioner provided a laborer at each end of the soffit to procure and draw up from the ground such material as was needed by the two carpenters. The two platforms or scaffolds were connected by a two inch by eight inch plank (referred to as plank A) which was 20 feet in length and 20 feet above the ground and used to brace the "A" frames supporting the soffit.

On the date in question, decedent left the place where he was working at the west end of the beam soffit, and walked easterly on plank A to the other end of the soffit. When he started to return, he stepped off, or fell, death resulting from the injuries sustained in the fall. At the time, decedent had a 2 by 4 inch wedge, 14 or 16 inches long, in his hand.

The award of $2,500 additional compensation was made pursuant to section 4553 of the Labor Code upon the ground of employer's wilful misconduct in not providing scaffolding or a railing along the entire length of plank A which connected the two platforms, in disregard of General Construction Safety Order No. 1118, i. e., "(a) Scaffolds shall be provided for all work that cannot be done safely by workmen standing on permanent or solid construction, except where such work can be safely done from ladders."

A safety engineer was employed on the project by petitioner and petitioner's insurance carrier also employed a safety engineer.

Petitioning employer urges that the evidence does not support the purported findings of fact to the effect: (1) that the injury was proximately caused by the serious and wilful misconduct of said employer; and (2) that said serious and wilful misconduct of said employer consisted in the failure to furnish the scaffolding within the meaning of Order Number 1118 of the Construction Safety Orders of the Industrial Accident Commission.

In this regard petitioner argues that no dangerous condition existed at the place where the deceased employee was required to work, in that a platform or scaffold with a railing had been erected at each end of the soffit where the corbels

were being constructed and helpers were provided to assist the carpenters and to furnish the material as needed by them. Therefore, when decedent left a safe place where he was required to work and went about some other business where he had no right to be, employer could not be charged with the duty of providing scaffolding at the latter place.

What constitutes serious and wilful misconduct within the meaning of the Workmen's Compensation Act so as to entitle the employee to an increased award as therein provided, has frequently been discussed by the courts of this state. In *E. Clemens Horst Co.* v. *Industrial Acc. Com.*, 184 Cal. 180, 188 [193 P. 105, 16 A.L.R. 611], serious and wilful misconduct is defined as follows:

"The first question presented is, then, Was the commission justified in finding that the petitioner was guilty of 'serious misconduct'? There is no statutory definition of this term. In this connection we may again quote from Beven [Workmen's Compensation] page 401: 'To constitute "serious misconduct," it is probably that the legislature intended to signify conduct that an average workman in being guilty of, either would know, or ought to know if he turned his mind to consider the matter, to be conduct likely to jeopardize his own and his fellow-workman's safety.' In our opinion the serious misconduct of an employer under our statute may be similarly defined. There should be no difference in principle between the degree of care required of an employer and that exacted from an employee. 'Serious misconduct' of an employer must, therefore, be taken to mean conduct which the employer either knew, or ought to have known, if he had turned his mind to the matter, to be conduct likely to jeopardize the safety of his employees. . . .

"Next, as to whether such serious misconduct was 'willful.' It has frequently been said that willful misconduct involves the *knowledge* of the person that the thing which he is doing is wrong. [Citation of authorities.] Conceding that knowledge is required, it seems to us that in order to prove the requisite knowledge, it is not necessary for the evidence to show positively that the person was notified of the unsafe condition of his premises, but that it is sufficient if it appears that the circumstances surrounding the act of commission or omission are such as 'evince a reckless disregard for the safety

of others and a willingness to inflict the injury complained of.' '' (Citation of authorities.)

█ Whether serious and wilful misconduct of the employer caused the employee's injury "is essentially one of fact and the commission's determination will not be disturbed if it has any evidentiary support." (*Bethlehem Steel Co.* v. *Industrial Acc. Com.*, 23 Cal.2d 659, 665 [145 P.2d 583], citing *Parkhurst* v. *Industrial Acc. Com.*, 20 Cal.2d 826 [129 P.2d 113].) Moreover, the "findings of the Industrial Accident Commission are subject to review only insofar as they have been made without any substantial evidence whatsoever in support thereof. The jurisdiction of an appellate court in cases of this character is limited strictly to determining whether there is evidence sufficient to sustain the award." (*Helmick* v. *Industrial Acc. Com.*, 46 Cal.App.2d 651, 661 [116 P.2d 658].)

"It may be conceded that, generally speaking, the mere failure of an employer to comply literally with the requirement of a safety order of the Industrial Accident Commission does not of itself justify a finding that the employer is guilty of serious and wilful misconduct. In the final analysis, the circumstances presented by the evidence in any case will be determinative of the question of whether or not the employer's act may properly be characterized as 'serious and wilful misconduct.' '' (*Ethel D. Co.* v. *Industrial Acc. Com.*, 219 Cal. 699, 704 [28 P.2d 919].)

The safety order, heretofore mentioned, with a violation of which petitioning employer is charged, required that "Scaffolds shall be provided for all *work* that cannot be done safely by workmen standing on permanent or solid construction . . . ." In other words, an employer "is under a duty to supply his employees a reasonably safe place in which to work" (*Hatheway* v. *Industrial Acc. Com.*, 13 Cal.2d 377, 382 [90 P.2d 68]).

In *Dawson* v. *Industrial Acc. Com.*, 54 Cal.App.2d 594, 598, 602 [129 P.2d 479], the widow and minor children of a deceased employee were granted a review of an order denying additional compensation for the death of said employee on the ground of alleged "serious and wilful misconduct in installing and maintaining in the shaft dangerously-defective and inadequate staging and structure upon which the *employees were compelled to work,* and in neglecting to properly

brace, block or wedge the framework in the shaft so as to render it safe and secure.'' (Italics ours.) In affirming the order denying the award, the court stated: ''It will be observed that the misconduct on the part of the employer which will justify an increase of compensation provided for by section 4553 of the Labor Code must be both 'serious and wilful'. The term 'wilful misconduct,' as it is used in that section, involves the same sort of dereliction of duty as that on the part of the driver of an automobile which authorizes an individual to recover damages for personal injuries sustained while riding as a guest in the machine of another person, under section 403 of the Vehicle Code. In the case of *Norton* v. *Puter*, 138 Cal.App. 253 [32 P.2d 172], at page 258, that term is defined as follows: 'Wilful misconduct depends upon the facts of a particular case and necessarily involves deliberate, intentional or wanton conduct in doing or omitting to perform acts, with knowledge or appreciation of the fact, on the part of the culpable person, that danger is likely to result therefrom (Citing numerous authorities.)' The preceding definition is approved by the Supreme Court in the case of *Porter* v. *Hofman*, 12 Cal.2d 445 [85 P.2d 447] at page 447.

''In the case of *Helme* v. *Great Western Milling Co.*, 43 Cal.App. 416 [185 P. 510], at page 421, the court says:

'' ' ''Willful misconduct'' means something different from and more than negligence, however gross. The term ''serious and wilful misconduct'' is described by the supreme court of Massachusetts as being something ''much more than mere negligence, or even gross or culpable negligence,'' and as involving ''conduct of a *quasi* criminal nature, the intentional doing of something either with the knowledge that it is likely to result in serious injury, or with wanton and reckless disregard of its possible consequences.'' . . . To constitute ''wilful misconduct'' there must be actual knowledge, or that which in law is esteemed to be the equivalent of actual knowledge, of the peril to be apprehended from the failure to act, coupled with a conscious failure to act to the end of averting injury.' ''

While it is true that Francis Reynolds, a carpenter working with decedent, testified that he had seen men walk back and forth on the 2″ x 8″ plank A prior to the fall; and Fred W. Maas, assistant superintendent, testified that he knew that the workmen used this plank to walk across from east

to west, or from the west to the east end of the soffit "on certain occasions"; and C. E. Epps, carpenter foreman, who put decedent to work on the beam soffit, in answer to the query: "Had you seen men walking across from east to west and west to east on this 2 x 6?", testified: "Well, I think, I don't know, but I imagine most of the other fellows did," nevertheless, the record is clear that decedent at the time he met his death was engaged in constructing a corbel at the west end of the said beam soffit; that at the place in question a platform or scaffold had been erected for the purpose of safeguarding him and the other employees working there, and in addition he had been provided with helpers to procure such material as was needed by him and to assist him in the work which he was then doing, i. e., the construction of a corbel at the west end of the beam soffit. But that said decedent left the safe place provided for him and embarked on a mission the purpose of which can only be explained by speculation.

Applying the foregoing principles of law, the undisputed facts do not disclose a sufficient showing of wilful and intentional disregard of the safety of its employees as would suffice to justify the findings and conclusions of the commission that petitioner was guilty of such serious and wilful misconduct as to bring it within the penalty prescribed by section 4553 of the Labor Code which was imposed herein.

For the reasons stated, the additional award of $2,500 is annulled.

Doran, J., and White, J., concurred.