[Civ. No. 8877.   Third Dist.   June 6, 1956.]

DONNIE L. CARMEAN, a Minor, etc. et al., Respondents, v. CLAUDE WILLIAM BRIDGES, Appellant.

DONALD V. MEEKS, a Minor, etc. et al., Respondents v. CLAUDE WILLIAM BRIDGES, Appellant.

(Consolidated Cases.)

Landram & Silveira, H. K. Landram and William L. Garrett for Appellant.

Chandler & Hammerberg for Respondents.

VAN DYKE, P. J.—These actions were brought by respondents against appellant Bridges based on alleged wilful misconduct whereby respondents, who were guests in appellant's automobile, were injured. The two cases were consolidated and tried to the court sitting without a jury. The court rendered judgments in favor of the plaintiffs and Bridges appeals.

The two respondents were minors who were serving in the United States Navy. They had been hitch-hiking. Near Gilroy they were picked up by appellant who was eastbound and traveling alone along Highway 152 which crosses over the Pacheco Pass and into the San Joaquin Valley. The accident occurred on a straight two-lane stretch of highway shortly after appellant had emerged from the pass and had reached

the floor of the valley. The traffic was described by respondent Carmean as being "fairly heavy." He said there "was a line of cars" going west. It was daylight and the weather was dry and clear.

The testimony of appellant as to his driving, if accepted, would clearly absolve him of the charge of wilful misconduct. Under the well-known rule, however, we must, on appeal, take the testimony in the record most strongly against him. That evidence may be stated as follows: After emerging from the pass and coming to the straight road appellant stepped up his speed so that he was proceeding at between 70 and 80 miles per hour and at fluctuating speed within those limits. Ahead of him and going in the opposite direction was this line of cars. It was late afternoon and these cars were proceeding toward the pass. When the speed reached 70 to 80 miles per hour, Carmean commented to the driver that he had seen an accident about two weeks prior to that, that the road was dangerous, "the curves were dangerous at that speed." He said that he did not protest because it appeared to him the appellant was sober, was watching the road, "was driving in a manner where I would trust his driving and seemed to be intelligent enough to be able to take care of himself." While appellant was driving at the indicated speed and passing the line of cars, a car at a distance ahead which Carmean estimated at about one-half mile pulled out into appellant's lane with the apparent purpose of passing a car or cars ahead. Within the space of a "city block" appellant applied his brakes, whereupon his automobile skidded diagonally across the highway a distance of 150 feet and struck an oncoming car. The driver of the passing car pulled entirely off the road to his left and entered a field. Respondents received severe injuries. The court awarded Meeks $20,000 and Carmean $15,000.

Upon these appeals appellant contends that there is insufficient evidence in the record to sustain the finding of wilful misconduct and further asserts that the damages awarded were excessive.

█ The commonly-accepted definition of "wilful misconduct" as the term is used in the guest law is that it consists in doing something that ought not to be done or in failing to do something that ought to be done under circumstances which show either knowledge that serious injury to a guest probably will result or a wanton and reckless disregard of the possible results. (See vol. 2, B.A.J.I., Civ. 692, and cited cases.)

We quote the following from *Reese* v. *Day,* 131 Cal.App.2d 730, 734 [281 P.2d 263] :

"Undoubtedly there is sufficient evidence of circumstances to support an inference that the deceased driver was grossly negligent. But is there sufficient evidence of wilful misconduct in view of the tests laid down by the cases? There is of course no evidence and no possibility of securing any evidence to show that he had an actual intent to injure . . . Appellant must then show that there are circumstances from which it can be inferred that deceased acted in a wanton and reckless disregard of the safety of his guest. In *Wright* v. *Sellers,* 25 Cal.App.2d 603, 613 [78 P.2d 209], it is said that it is 'sufficient if the act, or the failure to act, be done or omitted under such circumstances as would justify the reasonable inference that the driver should have known that injury to his guest was a probable result.'

"In *Meek* v. *Fowler,* 3 Cal.2d 420 [45 P.2d 194], the court stated that 'Wilful misconduct implies at least the intentional doing of something either with a knowledge that serious injury is a *probable* (as distinguished from a possible) result, or the intentional doing of an act with a wanton and reckless disregard of its *possible* result.' A recent case, *Mercer-Fraser Co.* v. *Industrial Acc. Com.,* 40 Cal.2d 102 [251 P.2d 955], cites *Meek* v. *Fowler,* with approval, and quotes from *Porter* v. *Hofman,* 12 Cal.2d 445 [85 P.2d 447], the definition of 'wilfulness' as necessarily involving 'the performance of a deliberate or intentional act or omission regardless of the consequences.' "

█ Within the limits of the definition it is well settled that the question of whether or not a host has been guilty of wilful misconduct is primarily a question of fact for the trial court's determination. (*Woodson* v. *Everson,* 61 Cal. App.2d 204, 212, 213 [142 P.2d 338] ; *Hallman* v. *Richards,* 123 Cal.App.2d 274, 281 [266 P.2d 812].)

█ While the situation portrayed by the testimony in this case, taken most strongly against appellant, poses a question not easy to answer, we have concluded that the findings of the trial court are sufficiently supported. Driving conditions on congested highways present well-known dangers and this is especially true where the highway contains but two lanes, so that any attempt by the driver of a car to pass a car ahead involves occupancy of the lane for opposing traffic for a considerable time during which both the driver of the passing car and the drivers of oncoming cars may easily and quickly

come into a situation of great peril. Notwithstanding this, it is to be expected that anxious and perhaps insufficiently cautious drivers will decide to pass. A man driving past a line of approaching cars at a speed of 80 miles an hour can be held to be acting in disregard of a known danger. At that speed he covers about 120 feet of distance per second. If approaching traffic is moving at about prima facie maximum speed the passing car will approach him at about 80 feet per second so that the distance between the two will diminish at the rate of about 200 feet per second. If a driver ahead pulls out of his traffic lane to pass, his observation of approaching traffic can be nothing better than an estimate of the speed at which cars are approaching. He is not apt to anticipate such high speed under those conditions. What happened in this case is a good illustration of the great danger of driving past oncoming traffic which is lined up ahead at such a speed as 80 miles an hour. Respondent Carmean estimated that when the car ahead pulled out to pass it was half a mile away. This, of course, would have to be a fairly vague estimate since the car was coming directly toward him. In any event, we have a picture of the passing car being turned off the road and into a field in an apparent endeavor to avoid an otherwise inescapable collision, and we have also a picture of an attempt by appellant to stop his car which, due to the high speed, proved impossible and resulted in his loss of control. We think the trial court could justifiably conclude that the appellant had been guilty of wilful misconduct.

During the course of the trial the trial judge made a statement indicating that at that time he was viewing the question of liabiltiy from the standpoint of negligent conduct rather than that of wilful misconduct. However, we feel certain from the record that the decision of the court was not based upon such an erroneous concept. Trial briefs were filed setting forth definitions of "wilful misconduct" and we have no doubt that the court's conclusions were made after considering that the evidence measured up to the definition of wilful misconduct.

██ Appellant contends that the damages awarded by the trial court were excessive. The contention cannot be sustained. The physician at the hospital to which the respondents were first taken from the scene of the accident testified as follows: Donald Meeks had suffered a dislocation of the right clavicle, a fracture of the lower jaw, fractures of the right third, fourth and fifth transverse processes of the verte-

brae, and a fracture of the first rib on the left side. He also suffered a cerebral concussion. He was semiconscious when brought to the hospital and regained consciousness about the date of his discharge three days later when he was taken to Castle Field Hospital. Respondent Carmean had suffered a cerebral concussion, fractures of the third, fourth and ninth ribs on the left, a fracture of the scapula on the left side, a puncture of his lungs from one of the fractured ribs and extensive laceration of the right ear. He, too, had been transferred to Castle Field Hospital. Meeks testified that he could remember nothing of the accident. He stated he had received concussion of the brain, a slight fracture at the base of the skull near the right ear, a broken jaw, a broken clavicle, a broken rib and a breaking of spinal processes. He said his clavicle was deformed after recovery and that two years after the accident he suffered from headaches which occurred every two or three days; that they were severe headaches. He said his right arm goes out of place occasionally if he jerks it and his back continues to give him a lot of trouble. He was in the field hospital nearly three months, as a bed patient, until a short time before he went back to base where he was given light duty until he left the base and went to another hospital at Oak Knoll. His mother testified that he was in perfect health before the accident and was of a cheerful and alert disposition, enjoying athletic activity, that two years after the accident he still had ''a temperature around six in the evening,'' that he had recurring headaches that last two or three days at a time; that he had suffered a personality change in that he no longer cared to read or to be active in any way and just wanted to lie and rest without talking to anyone.

Carmean testified that he spent 39 days in the field base hospital as a bedridden patient except for the last two weeks when he was ambulatory in the ward. He testified to the same injuries which the physician at the receiving hospital said he had received and additionally he said he had a bad cut on his knee and his forehead was skinned. He said he had returned to active duty; that he had no residual injury outside of the fact that in cold weather his shoulder bothered him and when he played games his left side gave him trouble. He had a deformed ear. The $20,000 award of general damages to Meeks and $15,000 award of general damages to Carmean are substantially supported by the evidence.

The judgments appealed from are affirmed.

Peek, J., and Schottky, J., concurred.