[Crim. No. 4421. In Bank. Sept. 24, 1942.]

THE PEOPLE, Respondent, v. MAUDE MAE YOUNG, Appellant.

Newton F. Rozzelle, Jr., for Appellant.

Earl Warren, Attorney General, and Gilbert F. Nelson, Deputy Attorney General, for Respondent.

CARTER, J.—Defendant was found guilty by the court sitting without a jury of violating section 500 of the Vehicle Code. The accident, out of which the case arose, occurred on September 26, 1941, at the intersection of Thirtieth and Palm Streets in the city of San Diego. Thirtieth Street runs in a northerly and southerly direction and at that time was protected by boulevard stop signs. It is a surfaced street forty feet wide and located thereon are two pairs of street car tracks. For a block south from its intersection with Palm Street, the grade of Thirtieth Street was estimated by various witnesses to be from five to twenty per cent downward. The distance from the east side of a street car standing upon the east tracks to the east curb on Thirtieth Street is 10 feet 4 inches. There is no safety zone at the point where a northbound street car stops to receive or discharge passengers at the intersection of Palm and Thirtieth Streets. Palm Street is also forty feet wide and extends easterly and westerly.

On September 26, 1941, at approximately 5:00 p. m., defendant was driving her car north on Thirtieth Street behind a street car traveling in the same direction. It was a clear day and the streets were dry. The street car gradually came to a stop at its regular stopping place just south of the south line of Palm Street to discharge decedent, a passenger on the street car. Decedent, a boy thirteen years old, stepped down from the right front door of the street car, and while he was taking a second step in the direction of the east curb of Thirtieth Street, he was struck by the left front fender of defendant's car. He was rolled along or carried by defendant's car until it came to a stop 100 feet north of the street car between the tracks and the east curb of Thirtieth Street, receiving injuries causing his death.

The conductor on the street car and several other witnesses testified that defendant's car was traveling at thirty-five miles per hour at the time decedent was struck and that decedent was struck by the front of the left front fender of defendant's car. There was a skid mark on the pavement forty-seven feet long, from where defendant's car stopped toward the point of impact. The amber stop lights on the rear of the street car were operating. The street car prior to coming to a stop was traveling from twenty to twenty-five miles per hour.

Defendant testified that she approached the rear of the

street car, and when it was about one-half block from the place of the accident she was driving parallel with it at a speed of twenty-five miles per hour; that when the decedent dismounted from the street car the front of her car was past the door of the street car; that decedent stepped from the street car onto the top of the left front fender of her car; that she had no warning that the street car was going to stop or discharge a passenger at the intersection of Palm and Thirtieth Streets; that she stopped her car as soon as she could after collision; that the street car did not slow down gradually, rather it stopped suddenly. There were dents both on the top and front of the fender.

Section 500 of the Vehicle Code, for the violation of which defendant was found guilty, reads, except as hereafter noted, as follows:

"When the death of any person ensues within one year as the proximate result of injuries caused by the driving of any vehicle *with reckless disregard of, or wilful indifference to the safety of others,* (in a negligent manner or in the commission of an unlawful act not amounting to a felony), the person so operating such vehicle shall be guilty of negligent homicide, a felony, and upon conviction thereof shall be punished by imprisonment in the county jail for not more than one year or in the State prison for not more than three years." The change in the section from its former wording made by the 1941 amendment consisted of the deletion of the words in parenthesis and the addition of the words in italics appearing in the foregoing quotation.

There can be no doubt that the Legislature intended that something more than ordinary negligence was to be required by the 1941 amendment. The words deleted and those substituted in their place clearly have a different meaning. We believe this is clear even though it is noted that the 1941 amendment still refers to the crime as "negligent homicide." The term negligent as there used is given a sense not ordinarily ascribed to it by reason of the specific requirements as to the manner in which the vehicle must be driven to establish the crime, that is, "reckless disregard of, or wilful indifference to the safety of others."

In endeavoring to define the meaning of the terms used in the section in order that they may be intelligently applied to a given set of facts, certain principles must be kept in mind. There are classes of wrongful conduct, or

what might be termed misconduct, in the law of torts which exist in the shadowy realm between the two well established classes of ordinary negligence and intentional wrongdoing. Ordinary negligence consists of acts or omissions which are not compatible with the standard of care exercised by an abstract man of ordinary prudence. The test of such negligence is an objective rather than a subjective one. On the other hand, in the case of the intentional tort such as trespass and assault and battery, the test is subjective inasmuch as we are concerned with the intent of the alleged wrongdoer. Various terms have been used from time to time to describe conduct which falls within that intermediate realm, all of which have been difficult to apply. To add to the difficulty, there have been indications in some statutes and court decisions that there are distinct classes of conduct within that realm. Such terms as gross negligence and wilful misconduct have been employed.  In keeping with the policy of the law that a statute imposing a penalty should be as concrete and certain as circumstances will permit, we believe that the Legislature intended that the terms used in section 500 should be interpreted in accordance with the definitions given by the courts to other similar terms if those definitions may reasonably be said to fit the particular words used. Certainly the intention to increase the confusion arising from an extension of the differentiation of classes of conduct within that realm is not to be presumed. With these thoughts in mind we turn to one of the most frequently defined classes of conduct in that realm, wilful misconduct, upon which the liability of a host for an injury to his guest is made to depend as contemplated by section 403 of the Vehicle Code. While the policy behind sections 500 and 403 is probably not the same, they both envisage something more than ordinary negligence but less than the conventional intentional tort. If the definition of wilful misconduct is consonant with the words used in section 500, their meaning may be said to be similar. The most acceptable definition of wilful misconduct is stated in *Howard* v. *Howard,* 132 Cal. App. 124, 129 [22 P. (2d) 279], as follows:

"But wilful misconduct as used in this statute means neither the sort of misconduct involved in any negligence nor the mere intent to do the act which constitutes negligence. Wilful misconduct implies at least the intentional doing of something either with a knowledge that serious injury is a *probable* (as distinguished from a possible) result,

or the intentional doing of an act with a wanton and reckless disregard of its *possible* result.'' (See, also, *Porter* v. *Hofman,* 12 Cal. (2d) 445 [85 P. (2d) 447]; *Parsons* v. *Fuller,* 8 Cal. (2d) 463 [66 P. (2d) 430]. ▆ Reckless disregard of the safety of others appearing in section 500 is doing an act while recklessly ignoring the safety of others. It is thus equivalent to, quoting from the definition, the ''intentional doing of an act with wanton and reckless disregard of its possible result.'' ▆ Wilful indifference to the safety of others, is an intentional lack of regard concerning the safety of others, or ''an intentional doing of something with knowledge that serious injury is a probable result.'' ▆ With particular reference to a reckless disregard for the safety of others it is worthy of note that reckless driving is defined as driving a car ''in . . . wilful or wanton disregard for the safety of persons.'' (Veh. Code, § 505.) And in a well reasoned decision by the superior court sitting as an appellate tribunal in *People* v. *McNutt,* 40 Cal. App. (2d) (Supp.) 835 [105 P. (2d) 657], the court concluded that reckless driving and wilful misconduct as specified by the Vehicle Code were the same. (See, also, *People* v. *Thompson,* 41 Cal. App. (2d) (Supp.) 965 [108 P. (2d) 105]; *People* v. *Nowell,* 45 Cal. App. (2d) (Supp.) 811 [114 P. (2d) 81].) While it is true that with reference to the disregard for the safety of others in defining reckless driving, the character of the disregard is described as ''wilful or wanton'' rather than ''reckless'' as appears in section 500, there is no substantial difference. It has been stated that:

''The actor's conduct is in reckless disregard of the safety of another if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him.'' (Restatement, Torts, § 500.) There may have been instances in which the phrase ''reckless disregard for the safety of others'' has been considered as conduct less reprehensible than that described in the above quotation, but it must be remembered that we are here interpreting a criminal statute carrying a severe penalty, and thus it is reasonable to suppose that the Legislature was concerned with conduct which was at least quasi criminal in character.

An examination of the record compels us to conclude that the evidence was insufficient to establish a violation of section 500 of the Vehicle Code in light of the foregoing discussion. It has been held that the violation of a statutory duty alone does not constitute wilful misconduct. (*Porter* v. *Hofman, supra*); that speed alone or inattention to the roadway ahead alone, does not constitute wilful misconduct (*Stacey* v. *Hayes*, 31 Cal. App. (2d) 422 [88 P. (2d) 165]); and that colliding with a car at an intersection while traveling sixty miles per hour was not wilful misconduct. (*McCann* v. *Hoffman*, 9 Cal. (2d) 279 [70 P. (2d) 909].) The defendant in the case at bar was merely negligent. She was driving her car up an incline. She was overtaking and endeavoring to pass a street car in the proper traffic lane for that purpose. She may have been exceeding the speed limit but cannot be said to have been traveling at a particularly excessive speed. She was observing the street car, but did not know that it was going to stop to discharge a passenger, except in the sense of her general knowledge that street cars do stop at intersections to permit passengers to dismount. The People's evidence shows that the street car stopped gradually, but defendant's failure to observe that was the lack of that care expected of a man of ordinary prudence, that is, ordinary negligence without a high degree of probability of injury to others. The driver of a vehicle overtaking a street car stopped or about to stop for the purpose of discharging passengers where there is no safety zone is required to stop the vehicle at the rear of the street car and there remain until any persons alighting have reached a place of safety. (Veh. Code, § 571.) Assuming defendant violated that rule, the mere violation thereof under the circumstances did not constitute wilful misconduct or reckless disregard of, or wilful indifference to the safety of others. She testified that she did not see the decedent until he stepped from the street car onto her fender. The People's witnesses stated that deceased had stepped down and commenced to take the next step forward when he was struck. This is not a case where defendant had an opportunity to see the deceased for some distance but still continued on her course, thus showing an element of intent to cause injury or a high degree of probability thereof.

The judgment is reversed.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., and Peters, J. pro tem., concurred.