Filed 10/9/20

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D076070 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN387263) |
| MICHAEL ARTHUR BARBER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Bradley A. Weinreb, Judge.  Affirmed.

George L. Schraer, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Alana Cohen Butler, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Michael Arthur Barber of reckless driving (Veh. Code, § 23103, subd. (a)).  The jury also found true that Barber personally inflicted great bodily injury (Pen. Code, §§ 12022.7, subd. (a), 1192.7, subd. (c)(8)) and proximately caused a loss of consciousness of another (Veh. Code, § 23105, subd. (a)).  The court placed Barber on formal probation for three years.

Barber appeals, contending the trial court prejudicially erred when it refused to give a special jury instruction he proposed, the great bodily injury enhancement finding must be stricken because it is an element of reckless driving, and, in the alternative, the matter should be remanded with instructions to the trial court to determine whether to strike the great bodily injury finding in furtherance of justice. Additionally, while this matter was pending, we granted Barber's motion to file a supplemental opening brief. In that brief, he argues CALCRIM No. 2200 incorrectly defines one of the elements of reckless driving. We conclude none of Barber's claims has merit. As such, we affirm.

## FACTUAL BACKGROUND

### Prosecution

Carlsbad Boulevard runs north to south along the coastline. At the intersection of Carlsbad Boulevard and Avenida Encinas in Carlsbad, the north and southbound lanes are separated by a wide landscaped median. The southbound lanes run closest to the beach, and, just south of the intersection, there is a dirt parking lot, which abuts the bike lane. The area is a corridor for surfers and beachgoers to get to the beach.

On March 5, 2018, Barber parked his car in the dirt lot just south of the intersection of Carlsbad Boulevard and Avenida Encinas and went for a run. Afterward, he needed to pick up his son. To do so, he wanted to go east on Avenida Encinas, which from the parking lot he could not directly access because it was north of his car, and the lanes abutting the parking lot only went southbound. Rather than continuing southbound on Carlsbad Boulevard, making a U-turn, and accessing Avenida Encinas from northbound Carlsbad Boulevard, Barber put his car in reverse and drove northbound backward in the bike lane against the flow of traffic on

2

southbound Carlsbad Boulevard. He had hoped to enter the traffic lanes and make a left turn onto Avenida Encinas. When he looked behind, he did not see any cars, bikes, or pedestrians. He was driving at about 25 miles per hour and proceeded backward through the intersection. In doing so, he drove backward through two crosswalks.

Around that same time, S.H. had been walking along Avenida Encinas and was preparing to cross the intersection at southbound Carlsbad Boulevard. When the light was red for southbound traffic, S.H. proceeded into the crosswalk at the intersection. A motorist who was stopped at the red light saw Barber speeding toward S.H. as she continued through the crosswalk; so, the motorist honked her horn. The honking did not stop Barber from colliding into S.H. as she entered the bike lane area of the crosswalk. The impact of the collision threw S.H. about 10 feet away. Barber felt the impact and looked in the rearview mirror to see a pedestrian bounce off the back of his car. He stopped the car, got out, and saw a woman lying on the ground.

A lifeguard and an off-duty paramedic were in the vicinity when the collision occurred and rendered aid. S.H. was struggling to breathe, coughing up blood, and bleeding profusely from her mouth, nose, ears, and scalp. She displayed symptoms of severe traumatic brain injury.

Barber remained on the scene. He was cooperative, forthright, and very upset about what had happened. A test at the scene revealed that Barber had no alcohol in his system. The rear left area of Barber's car was dented where he hit S.H.

An ambulance arrived and transported S.H. to the hospital. Upon admission to the hospital, it was discovered that S.H. suffered from traumatic brain injury, which included hemorrhages in the brain and skull fractures.

3

As a result of the brain injury, she had difficulty breathing on her own. Given S.H.'s inability to perform simple tasks, her brain injury was considered severe. In addition to her brain injury, her collarbone, shoulder blade, and three bones in her back were fractured. Once S.H.'s acute symptoms were treated, she was referred to a rehabilitation facility. She had no memory from the day of the collision until she was in the ambulance on the way to the rehabilitation center. As a result of her injuries, she suffered severe memory loss, loss of language, and ongoing physical issues, which continued to require additional surgeries.

Defense

Barber is a retirement planner for teachers and seniors and has a 15-year-old son. On the day of the incident, Barber picked up his son from school at 2:45 p.m. and dropped him off at an athletic training class at 4:00 p.m. The class lasted for an hour; thus, Barber went for a run on the coast. Barber got back to his car at about 4:45 p.m.

To pick up his son, Barber could go south on Carlsbad Boulevard for three-quarters of a mile and make a U-turn at a cross street. Or he could back up against traffic to Avenida Encinas and use it to get to northbound Carlsbad Boulevard. Barber decided to do the latter.

Barber looked for pedestrians and did not see any. He checked his mirrors before he started driving. Barber got into his car and backed up, looking over his shoulder as he drove. Barber estimated that he was going 15 miles per hour as he backed up. He went straight back and did not see anyone or hear any horns. He was shocked when he felt an impact. Barber got out of the car and saw S.H. lying on the ground. Barber asked if she was okay and took out a towel and placed it under her head.

Barber testified that if he had seen anyone in the area, he would not have driven in reverse against traffic. Barber did not believe he was posing a risk of danger to anyone. Barber knew it was against the law to drive against the direction of traffic and to drive through a crosswalk if there is a pedestrian in it.

## DISCUSSION

## I

## JURY INSTRUCTIONS

### A.  Barber's Contentions

Barber makes two assertions regarding the jury instructions the trial court provided to the jury. First, he claims the court prejudicially erred in refusing to give a special instruction further defining the term "wanton." Second, Barber insists that CALCRIM No. 2200, which was given to the jury, misstates the law. We reject both of these contentions.

### B.  Background

Before trial, Barber filed a motion asking the trial court to give two special jury instructions. Barber proposed these special instructions because he believed they were necessary to properly explain the mental state needed to commit reckless driving.

The first requested special instruction stated: "The term 'wanton' means the intentional doing of something with the knowledge that serious injury is a probable result. [¶] Negligence, even though it be gross negligence, is not willful misconduct and does not amount to wantonness."

The second requested instruction provided:

> "*Gross Negligence* involves more than ordinary carelessness, inattention, or mistake in judgment. A person acts with gross negligence when:  1. He [acts] in a reckless way that creates a high risk of death or great bodily injury; [¶] AND [¶]  2. A reasonable person would

5

have known that acting in that way would create such a risk. [¶] In other words, a person acts with gross negligence when the way he acts is so different from how an ordinarily careful person would act in the same situation that his act amounts to disregard for human life or indifference to the consequences of that act."

During hearings on in limine motions, the parties and the court discussed the instructions Barber had requested. After entertaining argument from the parties, the court tentatively ruled that it would not give either of the requested instructions, but it said defense counsel could revisit the issue depending on the evidence and the arguments defense counsel intended to present to the jury.[1]

During the trial, before the parties rested, the matter of the special instructions was raised again. The trial court allowed the parties to argue the merits of the special instructions, but, ultimately, the court said it was not inclined to provide the special instructions to the jury.

The court, however, instructed the jury on the elements of reckless driving under CALCRIM No. 2200. As such, the court instructed the jury, as to the crime of reckless driving, as follows:

"The defendant is charged in Count 1 with reckless driving in violation of Vehicle Code Section 23103.

"To prove the defendant is guilty of this crime, the People must prove the following elements: One, the defendant drove a vehicle on a highway; and two, the defendant intentionally drove with wanton disregard for the safety of persons or property.

---

[1] Here, we are only concerned with the first proposed special instruction. Further, because the parties only address the first sentence of that instruction, we limit our analysis accordingly.

6

"A person acts with wanton disregard for safety when, one, he or she is aware that his or her actions present a substantial and unjustifiable risk of harm; and two, he or she intentionally ignores that risk. The person does not, however, have to intend to cause damage."

During his closing argument, defense counsel acknowledged that by taking a shortcut, Barber "caused a horrendous accident." Counsel argued, however, that Barber "did not commit this serious crime of reckless driving." Defense counsel focused the jury on Barber's state of mind. He then attempted to define wanton disregard for the safety of others, which he explained, "means that Mr. Barber was aware that his actions presented a substantial and unjustifiable risk of harm and that he intentionally ignored that risk. [¶] To put it in ordinary language, what that means is that, injury was probable."

The prosecutor objected that Barber's trial counsel had misstated the law. Before the court could rule on the objection, defense counsel countered "[i]t absolutely states the law." The court sustained the prosecutor's objection, stating: "I will admonish the jury that the definitions and the instructions concerning the definition of reckless driving and the definition for acting with wanton disregard for safety has been provided to you in the instructions that I've given you."

The parties then participated in a lengthy sidebar, again discussing the need to define wanton for the jury as set forth in Barber's first special instruction. Nevertheless, the court remained unpersuaded by defense counsel's assertion.

When resuming his closing argument, Barber's trial counsel focused on reckless driving. Defense counsel explained that willful and wanton required "a more aggravated mental state" that was "beyond" merely thinking "if I drive a car through a farmer's market, somebody is probably going to get

7

hurt[,] [b]ut . . . I don't care." He also emphasized that "[w]illful and wanton requires a specific mental state appreciating that . . . there is a substantial risk of harm. Somebody is going to get hurt if I do this. And yet the person acts with indifference, indifference. Intentionally ignores that risk. That's the standard."

The jury began deliberations on the afternoon of February 28, 2019. Slightly before noon the next morning, the court stated it had received a motion from defense counsel to suspend jury deliberations and allow supplemental argument. In the motion, Barber asked the court to allow supplemental closing argument discussing the phrase "willful and wanton disregard for persons or property" as set forth in CALCRIM No. 2200. After allowing the parties to address the possibility of holding supplemental closing arguments, the trial court denied defense counsel's request as untimely. It also rejected on its merits Barber's contention that an instruction on "probability" of injury was proper.

During deliberations, the jury sent the court a note asking: "Does the term 'substantial risk' as used to define 'wanton disregard' mean the jury is to define what we consider 'substantial' or are we to consider what the accused would define as 'substantial?' "

The court held a hearing on the jury's note. Defense counsel said he believed the test was the state of mind of Barber, not the jury. The prosecutor suggested the court should tell the jury to use the ordinary meaning of the term. The court said the jury's note did not ask for a definition of what the term substantial risk means, but rather whose perspective the jury should consider when determining if there was a substantial risk. The court said it believed the jury had to decide if Barber was aware of the risk.

8

Barber's trial counsel agreed that substantial risk should be viewed from Barber's point of view. Nevertheless, defense counsel insisted that, under relevant caselaw, Barber further had to be aware that his conduct created a probability of injury.

After further discussion, the court expressed the view that the jury must define the meaning of substantial risk and, in addition, must find that Barber was aware of that substantial risk before it could find him guilty of reckless driving. The court proposed that it answer the jury's question by saying that the jury must define the term substantial risk and must then determine whether Barber was aware that his "actions present[ed] a substantial and unjustifiable risk as set forth in CALCRIM 2200." The court explained: "The only thing we're doing is simply telling the jury they get to decide what they think substantial risk means and apply it to what he's aware of and what he intentionally does."

The court stated it would instruct the jury: "You, the jury, determine what substantial risk means and apply that definition to the defendant's mental state and intent as set forth in CALCRIM 251 and 2200."

The jury sent a second note to the court, requesting the transcript of Barber's testimony. The court provided the following response to the jury's request: "The court reporter will prepare the record for read back. You are to continue to deliberate until the testimony is ready." The bailiff delivered both of the court's responses to the jury at 3:12 p.m. Less than 20 minutes later, the bailiff notified the court that the jury had reached a verdict.

C. Legal Principles

We review a claim of instructional error de novo. (*People v. Posey* (2004) 32 Cal.4th 193, 218.) "Review of the adequacy of instructions is based on whether the trial court 'fully and fairly instructed on the applicable law.' "

9

(*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088.)  In determining whether error has been committed in giving jury instructions, we consider the instructions as a whole and assume jurors are intelligent persons, capable of understanding and correlating all jury instructions which are given.  (*Ibid.*)  " 'Instructions should be interpreted, if possible, so as to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation.' "  (*Ibid.*)  "The crucial assumption underlying our constitutional system of trial by jury is that jurors generally understand and faithfully follow instructions."  (*People v. Mickey* (1991) 54 Cal.3d 612, 689, fn. 17.)

Generally, the trial court is required to instruct the jury on the general principles of law that are closely and openly connected with the evidence and that are necessary to the jury's understanding of the case.  (*People v. Barker* (2001) 91 Cal.App.4th 1166, 1172 (*Barker*).)  It also has a duty to refrain from giving incorrect instructions or instructions on principles of law that are irrelevant and that would have the effect of confusing the jury or relieving it from making findings on the relevant issues.  (*Ibid.*; see *People v. Saddler* (1979) 24 Cal.3d 671, 681 (*Saddler*).)

Here, Barber refers to his suggested special instruction as a pinpoint instruction.  The law on pinpoint instructions is established.  Our high court has "suggested that 'in appropriate circumstances' a trial court may be required to give a requested jury instruction that pinpoints a defense theory of the case by, among other things, relating the reasonable doubt standard of proof to particular elements of the crime charged.  [Citations.]  But a trial court need not give a pinpoint instruction if it is argumentative [citation], merely duplicates other instructions [citation], or is not supported by substantial evidence [citation].  An instruction that does no more than affirm

10

that the prosecution must prove a particular element of a charged offense beyond a reasonable doubt merely duplicates the standard instructions defining the charged offense and explaining the prosecution's burden to prove guilt beyond a reasonable doubt." (*People v. Bolden* (2002) 29 Cal.4th 515, 558-559; see *People v. Harrison* (2005) 35 Cal.4th 208, 253.) A trial court may refuse a proffered instruction if it is duplicative. (*People v. Bacon* (2010) 50 Cal.4th 1082, 1112; *People v. Hartsch* (2010) 49 Cal.4th 472, 511; *People v. Gurule* (2002) 28 Cal.4th 557, 659.) Any error in refusing to give a requested pinpoint instruction is reviewed under the standard enunciated in *People v. Watson* (1956) 46 Cal.2d 818, 836: is it reasonably probable that a result more favorable to defendant would have been reached in the absence of the error? (*People v. Wharton* (1991) 53 Cal.3d 522, 571.)

### D. Analysis

Barber's central point here relates to the meaning of the term "wanton." Relying on a variety of cases decided some 60 to 80 years ago, stating that wanton involves a disregard of *probable* injury, Barber insists his first proposed special instruction was necessary to correctly define the term "wanton." To this end, Barber argues that the jurors needed the proposed special instruction so they would properly understand that he could only be convicted of reckless driving if he knew that his actions would probably lead to injury, but engaged in those actions nonetheless. (See *People v. McNutt* (1940) 40 Cal.App.2d.Supp 835, 837 (*McNutt*), citing *Albers v. Shell Oil Co.* (1930) 104 Cal.App.733, 750 ["The term 'wantonness' is thus defined: 'Wantonness includes the elements of consciousness of one's conduct, intent to do or omit the act in question, realization of the probable injury to another, and reckless disregard of consequences.' "]; *People v. Young* (1942) 20 Cal.2d 832, 837 (*Young*) [citing *McNutt* with approval for the proposition that

11

reckless driving and willful misconduct as specified by the Vehicle Code were the same]; *People v. Schumacher* (1961) 194 Cal.App.2d 335, 338 (*Schumacher*) ["To establish the offense of reckless driving (Veh. Code, § 23103), it must be shown that the defendant in the management of his automobile at the time and place in question intentionally did something with knowledge that injury to another was probable or acted with a wanton and reckless disregard for the safety of others and in reckless disregard of the consequences of his acts."].)

Acknowledging that *McNutt*, *Young*, and *Schumacher* could not be described as contemporary, Barber points out that more recent cases have reiterated the older cases' definitions of wanton. (See *People v. Taylor* (2018) 19 Cal.App.5th 1195, 1202 ["As the reckless driving statute has never defined driving with 'willful or wanton disregard for the safety of persons or property,' courts have determined that it targets driving manifesting a particular state of mind [citation], namely, 'consciousness of the results with intent to omit or do an act, realizing the probable injury to another; or acting in reckless disregard of the consequences; or conduct exhibiting reckless indifference as to the probable consequences with knowledge of likely resulting injury.' "]; *People v. Dewey* (1996) 42 Cal.App.4th 216, 221 [relying on CALJIC No. 16.840 to define wantonness as having " 'consciousness of conduct, intent to do or omit the act in question, realization of probable injury to another, and reckless disregard of the consequences' "].)

The People describe the caselaw Barber provides as "muddy" and claim it merely presents an alternative definition of the word "wanton" that the trial court had no obligation to provide. They also argue the proposed special instruction was substantially similar to CALCRIM No. 2200. In this sense, they essentially concede what Barber's trial counsel contended during closing

12

argument that his definition of wanton was simply the ordinary meaning of a substantial and unjustifiable risk. However, they argue the additional instruction would have only confused the jury, and, as such, the trial court did not err in refusing to give it. (See *People v. Hovarter* (2008) 44 Cal.4th 983, 1021 [court may properly refuse instructions that are confusing].) As we will explain, we agree with the People.

As the People point out, many of the cases on which Barber relies are older, and it possibly would be helpful if a court more recently addressed the proper jury instruction for reckless driving. However, although many of the cases Barber cites are older, none of those cases has been overruled, and they all remain good law. Also, it is not surprising that there is not a lot of caselaw discussing reckless driving. Typically, that crime is prosecuted as a misdemeanor when there is no resulting great bodily injury.

Vehicle Code section 23103, subdivision (a) provides, "A person who drives a vehicle upon a highway in willful or wanton disregard for the safety of persons or property is guilty of reckless driving." The statue does not define "wanton disregard for the safety of persons or property."

Barber is correct in noting that some cases have defined wanton, at least in part, as disregarding that an act will probably lead to injury. For example, in *McNutt, supra*, 40 Cal.App.2d.Supp. 835, the court examined whether sufficient evidence supported the defendant's conviction for reckless driving. (*Id*. at p. 836.) In examining the subject statute, the court determined that " 'wantonness' " included, " 'the elements of consciousness of one's conduct, intent to do or omit the act in question, realization of the probable injury to another, and reckless disregard for the consequences.' " (*Id*. at p. 837.) However, the court did not end its analysis with that definition. Instead, it discussed an alternative definition as follows:

13

" 'Where the conduct of defendant exhibits reckless indifference to the probable consequences, with knowledge of facts and circumstances likely to result in injury, it becomes wanton negligence.' " (*Ibid*.)

The court in *McNutt* continued to conclude that the requirements of reckless driving were not substantially different than the concept of willful misconduct contained in another statute, which rendered a driver responsible for injuries to his passengers. (*McNutt, supra*, 40 Cal.App.2d Supp. at pp. 838-839.) In doing so, the court considered a number of different definitions from other cases supporting the conclusion that willful misconduct was synonymous with reckless driving. (*Ibid*.) An alternative definition that the court discussed included not only acting with knowledge that serious injury was probable, but also, the intentional doing of an act with wanton and reckless disregard of its *possible* result. (*Id*. at p. 838.)

Therefore, although *McNutt* provides some support for Barber's requested special instruction, it does not establish that the special instruction was required or correctly stated the only definition of wanton recognized by caselaw. Neither does any of the other cases cited by Barber as we discuss below. Alternatively stated, caselaw does not support the conclusion that Barber's proposed special instruction is the only way reckless driving could be proved or that the sole definition of wanton is the intentional doing of an act with the knowledge that serious injury is a probable result. In this sense, Barber's proposed special instruction could have confused the jury because it presented only one means by which reckless driving could be proved; yet, it implied that it was the only way that reckless driving could be proved. Although portions of caselaw support Barber's definition, other portions of those same cases, as well as other caselaw, offer alternative definitions. Indeed, one case explicitly stated that a defendant could not avoid a reckless

driving offense simply by claiming he did not know his conduct would probably lead to injury. (See *People v. Nowell* (1941) 45 Cal.App.2d Supp. 811, 815 (*Nowell*) ["But it does not follow that if he does not know that an accident is probable, that he is for that reason to be freed from the charge of reckless driving."].) As such, we conclude the trial court did not err in refusing to provide Barber's proposed special instruction defining wanton because it was likely to confuse the jury. (*Saddler*, *supra*, 24 Cal.3d at p. 681; *Barker*, *supra*, 91 Cal.App.4th at p. 1172; see *People v. Cavitt* (2004) 33 Cal.4th 187, 202 [" '[I]t is dangerous to frame an instruction on isolated extracts from the opinions of the court.' "].)

Having determined that the trial court did not err in refusing to provide Barber's proposed special instruction defining wanton, we next turn to Barber's argument that CALCRIM No. 2200 incorrectly defined the elements required to convict Barber of reckless driving. To this end, Barber points out that CALCRIM No. 2200 informs a jury that a defendant can be convicted of reckless driving if he shows a wanton disregard for the safety of persons and property. The instruction further provides: "A person acts with *wanton disregard for safety* when (1) he or she is aware that his or her actions present a substantial and unjustifiable risk of harm, and (2) he or she intentionally ignores that risk." (CALCRIM No. 2200.) Barber notes that CALCRIM No. 2200 relies on *Schumacher*, *supra*, 194 Cal.App.2d 335 and *Young*, *supra*, 20 Cal.2d 832 for its definition of wanton disregard, but he argues neither case refers to a substantial and unjustifiable risk of harm.

We agree with Barber that neither *Schumacher* nor *Young* contain the exact verbiage that is found in CALCRIM No. 2200. Nevertheless, our analysis of this issue requires more than a mere search for similar language. We therefore turn our focus onto *Schumache*r and *Young*.

15

In *Schumacher*, following a bench trial, the court found the defendant, who was accused of felony drunk driving in violation of former Vehicle Code section 23101, guilty of reckless driving in violation of former Vehicle Code section 23103 as a lesser offense necessarily included in the charged offense. (*Schumacher*, *supra*, 194 Cal.App.2d at pp. 337-338.) The applicable reckless driving statute, former Vehicle Code section 23103, provided in part: "Any person who drives any vehicle upon a highway in willful or wanton disregard for the safety of persons or property is guilty of reckless driving."

On appeal, the defendant in *Schumacher* challenged the reckless driving conviction on the ground reckless driving was not necessarily included in the offense of felony drunk driving. (*Schumacher*, *supra*, 194 Cal.App.2d at p. 338.) The Court of Appeal agreed and reversed the conviction, holding that reckless driving is not a lesser offense necessarily included in the felony drunk driving offense defined in former Vehicle Code section 23101. (*Schumacher*, at p. 339.) The appellate court explained that felony drunk driving "can be committed without the presence of an element essential to the offense of reckless driving, namely, a 'wilful or wanton disregard for the safety of persons or property.' " (*Ibid.*) The court also indicated that the term " 'wilful' " used in the statutory phrase " ' "wilful or wanton disregard for the safety of persons or property" ' " meant "intentional," and thus " '[t]he intention . . . referred to relate[d] to the disregard of safety, etc., not merely to the act done in disregard thereof.' " (*Id.* at pp. 339-340.)

Moreover, as pertinent here, the court explained:

"To establish the offense of reckless driving (Veh. Code, § 23103), it must be shown that the defendant in the management of his automobile at the time and place in question intentionally did something with knowledge that injury to another was probable or acted with a wanton and

reckless disregard for the safety of others and in reckless disregard of the consequences of his acts." (*Schumacher*, *supra*, 194 Cal.App.2d at p. 338.)

However, later in the opinion, the court further defined wantonness to " ' "include[] the elements of consciousness of one's conduct, intent to do or omit the act in question, realization of the probable injury to another, and reckless disregard of consequences." ' " (*Schumacher*, *supra*, 194 Cal.App.2d at p. 340, citing *McNutt*, *supra*, 40 Cal.App.2d.Supp. at p. 837.) The court's definition of wantonness seems to muddle its previous statement regarding what must be established to prove reckless driving. It provided elements in the disjunctive: Either the defendant did something intentionally with knowledge that injury was probable *or* the defendant acted with wanton and reckless disregard for the safety of others. (*Schumacher*, at p. 338.) Yet, in further defining wanton to include the realization of probable injury and the intentional doing or omitting of an act, the court appears to conflate the two separate approaches it articulated regarding how reckless driving could be proved. To try to better understand the court's reasoning in *Schumacher*, we therefore consider another case the *Schumacher* court cited in discussing the definition of wanton: *Nowell*, *supra*, 45 Cal.App.2d Supp. 811. (See *Schumacher*, at p. 340.)

In *Nowell*, the appellate court considered "the meaning of the words 'wilful and wanton disregard for the of safety of persons or property,' as employed to define 'reckless driving.' " (*Nowell*, *supra*, 45 Cal.App.2d Supp. at p. 812.) Although the court acknowledged the importance of the word " 'probable' " as part of the definition of willful misconduct (*id.* at pp. 814-815), it explained that a charge of reckless driving is not only reserved for a defendant who knows that his conduct will probably cause harm, but also for

17

a defendant who was reckless as to the consequences of his actions even if he was not aware that the risk of harm was probable (*id*. at p. 815). The court further expounded:

> "We conclude, therefore, that one may be found guilty of reckless driving if he drives so as to show a wanton and reckless disregard of the possible consequences to persons or property of his manner of driving, even though it may not be a fact, and so he may not know, that the possible result of his driving will be to injure a person or property." (*Id*. at p. 816.)

Moreover, to provide an example that a defendant need not know his conduct will probably result in harm, the court in *Nowell* suggested, a person who "deliberately drive[s] at a high rate of speed, on the left-hand side of the road, around a blind curve" is guilty of reckless driving, regardless of whether there is any traffic coming in the opposite direction not visible to the driver. (*Nowell*, *supra*, 45 Cal.App.2d Supp. at pp. 814-815.)

Accordingly, both *Schumacher* and *Nowell* suggest a more fluid, less mechanical definition of the elements of reckless driving. Indeed, both cases imply that a defendant can be convicted of reckless driving without knowing that his actions would lead to probable injury. (See *Schumacher*, *supra*, 194 Cal.App.2d at pp. 338-339; *Nowell*, *supra*, 45 Cal.App.2d Supp. at p. 816.)

In *Young*, *supra*, 20 Cal.2d 832, our high court cited *McNutt* with approval for the proposition that reckless driving and willful misconduct as specified in the Vehicle Code were the same. (*Young*, at p. 837.) While finding multiple definitions acceptable, the California Supreme Court determined that the "most acceptable definition of willful misconduct" was as follows:

> " 'Wilful misconduct implies at least the intentional doing of something either with a knowledge that serious injury is a *probable* (as distinguished from a possible)

18

result, or the intentional doing of an act with wanton and reckless disregard of its *possible* result.' " (*Id.* at pp. 836-837, quoting *Howard v. Howard* (1933) 132 Cal.App.124, 129.)

The court also explained that "[r]eckless disregard of the safety of others . . . is doing an act while recklessly ignoring the safety of others." (*Young*, *supra*, 20 Cal.2d at p. 837.) In stating there was no "substantial difference" in describing "the character of the disregard" as " 'wilful or wanton' rather than 'reckless,' " the court cited to the Restatement of Torts with approval:

" 'The actor's conduct is in reckless disregard of the safety of another if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him.' " (*Ibid.*)

As such, our high court referred to wanton in terms of probable injury, but also discussed wanton and reckless disregard of a possible result as well as reckless disregard for the safety of others. In other words, nothing in *Young* leads us to conclude that reckless driving can only be proved if the defendant was aware that injury was probable.

In addition, we observe that the predecessor to CALCRIM No. 2200 (CALJIC No. 16.840), changed how it set forth the elements of reckless driving over time. According to the 1979 revision of that instruction, reckless driving was defined as follows:

"Every person who drives a vehicle upon a [street or] highway in willful or wanton disregard for the safety of persons or property, is guilty of reckless driving, a misdemeanor.

19

"The word 'willful', as used in this instruction, means an intentional disregard for the safety of others. It is not necessary to establish an intent to injure some person or property.

"The word 'wanton', as uses in this instruction, includes the elements of consciousness of conduct, intent to do or omit the act in question, realization of the probable injury to another, and reckless disregard of the consequences." (CALJIC No. 16.840 (1979 Revision).)

Thus, we see that the Committee on Standard Jury Instructions adopted, at least at one point, a definition of wanton that was substantially similar to the one proposed by Barber in his first special instruction. Nonetheless, in 1996, CALJIC No. 16.840 was modified to omit the previous version's definition of willful and wanton. The new version of the instruction read in part:

"Every person who drives a vehicle upon a [street] [or] [highway] in willful or wanton disregard for the safety of persons or property is guilty of a violation of Vehicle Code section 23013, subdivision (a), a misdemeanor.

" 'Willful or wanton disregard' means an intentional or conscious disregard for the safety of persons or property.

"In order to prove this crime, each of the following elements must be: proved:

"1. A person drove a vehicle upon a [street] [highway]; and

"2. At the time, the driver did so with an intentional or conscious disregard for the safety of persons or property." (CALJIC No. 16.840 (1996 Edition).)

Thus, the form jury instruction abandoned the probable language as to the definition of wanton and adopted a more amorphous definition of willful

20

or wanton disregard. Our independent research has not uncovered any explanation for the change or any caselaw that involves the interpretation of CALJIC No. 16.840. Further, the comments to both versions of CALJIC No. 16.840 indicate that the Committee on Standard Jury Instructions relied on *Schumacher, supra,* 194 Cal.App.2d 335 for its respective definitions of willful or wanton as they relate to reckless driving, despite the fact that the definitions are different.

CALJIC No. 16.840 remained unchanged until it was replaced by CALCRIM No. 2200, which is the instruction provided to the jury in the instant matter. Again, that instruction states in part:

> "To prove the defendant is guilty of this crime, the People must prove the following elements: One, the defendant drove a vehicle on a highway; and two, the defendant intentionally drove with wanton disregard for the safety of persons or property.

> "A person acts with wanton disregard for safety when, one, he or she is aware that his or her actions present a substantial and unjustifiable risk of harm; and two, he or she intentionally ignores that risk. The person does not, however, have to intend to cause damage." (See CALCRIM No.2200.)

So, we observe that in drafting CALCRIM No. 2200, the Judicial Council of California Advisory Committee on Criminal Jury Instructions (Committee) did not revive the probable injury language of the earlier version of CALJIC No. 16.840 and did not keep the more general statement defining willful or wanton disregard as an intentional or conscious disregard for the safety of persons or property found in the final version of CALJIC No. 16.840. Instead, the Committee opted for new language, defining "wanton disregard for safety" as a defendant being "aware that his or her actions present a substantial and unjustifiable risk of harm" and "ignor[ing] that risk."

21

(CALCRIM No. 2200.) We agree with Barber that the substantial and unjustifiable risk language is not found in either *Schumacher*, *supra*, 194 Cal.App.2d 335, or *Young*, *supra*, 20 Cal.2d 832, on which the Committee relied to draft the form instruction. That said, we are less concerned whether the identical language is contained in those cases than if the subject instruction correctly instructs the jury, consistent with applicable law, what it must find to convict a defendant of reckless driving.

We assume that jurors exercise common sense in construing instructions and deliberating. " 'We credit jurors with intelligence and common sense [citation] and do not assume that these virtues will abandon them when presented with a court's instructions.' " (*People v. Sanchez* (2013) 221 Cal.App.4th 1012, 1024.)

In the context of CALCRIM No. 2200, the word "substantial" does not have a technical meaning peculiar to the law. Merriam-Webster's dictionary defines "substantial" in the following ways: "1 a: consisting of or relating to substance [¶] b: not imaginary or illusory: real, true [¶] c: important, essential [¶] 2: ample to satisfy and nourish: full [¶] 3 a: possessed of means: well-to-do [¶] b: considerable in quantify: significantly great [¶] 4: firmly constructed: sturdy [¶] 5: being largely but not wholly that which is specified".[2] Further, synonyms for "substantial" include big, consequential, considerable, extraordinary, large, massive, meaningful, serious, significant, and sizable.[3]

---

[2] (<https://www.merriam-webster.com/dictionary/substantial> [as of October 9, 2020], archived at <https://perma.cc/5737-2JX6>.)

[3] (<https://www.thesaurus.com/browse/substantial?s=t> [as of October 9, 2020], archived at <https://perma.cc/9NXS-SSY8>.)

Merriam-Webster's dictionary defines "unjustifiable" as "unable to be justified:  not excusable or justifiable."[4]  Moreover, synonyms for "unjustifiable" include baseless, groundless, indefensible, inexcusable, unconscionable, and unforgivable.[5]

Neither the term "substantial" nor the term "unjustifiable" is uncommon.  To the contrary, these are words that are easily understood.  Regarding using those words to describe a type of risk, considering the applicable definitions and synonyms, a commonsense understanding of a "substantial and unjustifiable risk" would be a risk that is significant, large, or extraordinary and is indefensible.  In other words, a substantial and unjustified risk is not one that a person would feel comfortable ignoring.  In fact, he or she would be reckless to do so.

In applying this understanding of "substantial and unjustifiable risk" to the pertinent caselaw, we are satisfied that CALCRIM No. 2200 accurately states the elements of reckless driving.  For example, in *Young*, *supra*, 20 Cal.2d 832, our high court concluded that willful misconduct and reckless driving were the same.  It then provided alternative definitions for willful misconduct to include intentionally performing an act with knowledge that serious injury is probable or intentionally doing an act with wanton and reckless disregard of its possible result.  (*Id*. at pp. 837-838.)  The court further explained that "[r]eckless disregard of the safety of others . . . is doing an act while recklessly ignoring the safety of others."  (*Id*. at p. 837.)  We are satisfied that the phrase "substantial and unjustifiable risk" captures the

---

[4]     (<https://www.merriam-webster.com/dictionary/unjustifiable> [as of October 9, 2020], archived at <https://perma.cc/MC89-72A8>.)

[5]     (<https://www.thesaurus.com/browse/unjustifiable> [as of October 9, 2020], archived at <https://perma.cc/4377-QHFV>.)

mental state for reckless driving set forth in *Young*. Ignoring such a risk, would show the defendant had a reckless disregard for the safety of others.

Similarly, we determine CALCRIM No. 2200 is consistent with *Schumacher*, *supra*, 194 Cal.App.2d 335. In that case, the appellate court held that to establish the offense of reckless driving, the prosecutor must prove the defendant, in driving his vehicle, intentionally did something with knowledge that injury to another was probable or acted with a wanton and reckless disregard for the safety of others and in reckless disregard of the consequences of his acts. (*Id.* at p. 338.) Certainly, if a defendant was aware his or her conduct created a probable risk of injury, that risk would be "substantial and unjustifiable." In the alternative, a "substantial and unjustifiable risk" is one that a defendant would be wanton and reckless to ignore as it would jeopardize the safety of others. Thus, the form instruction satisfies both ways in which the court in *Schumacher* suggests reckless driving could be shown.[6]

In addition, the case before us presents a very egregious set of facts that clearly establish reckless driving in any event. Barber backed out of a parking lot in an area he knew could be crowded with bikers and pedestrians. When he backed out of the parking lot, he then proceeded to drive in reverse in the bike lane traveling in the opposite direction of oncoming traffic. He testified that he decided to drive in reverse, against traffic, because the bike

---

[6] We are mindful that the term "probable" and the phrase "substantial and unjustifiable" are not necessarily synonymous. Nonetheless, we struggle to contemplate a situation where a probable risk of injury would not be a "substantial and unjustifiable risk of harm." Although the counter might not be true (a substantial and unjustifiable risk might not necessarily be probable), we note there is no caselaw that establishes reckless driving can only be proved if the defendant was aware that injury was probable. (See, e.g., *Nowell*, *supra*, 45 Cal.App.2d Supp. at pp. 815-816.)

24

lane was big enough to accommodate his car. Barber further insisted that he would not have decided to travel in reverse, against traffic if the bike lane was narrower and his car would not have fit. Thus, it appears Barber knew traveling the wrong way in a bike lane could be dangerous, but based his evaluation of danger on whether his car would fit in the lane, apparently not considering that bicyclists and joggers could use the bike lane in a busy pedestrian area near the beach. In fact, Barber admitted that "lots of people" go jogging, biking, and travel to the beach in the area he was driving through.

He drove in this dangerous fashion for a substantial distance, from the lot, on the street, through a crosswalk, a busy intersection, and another crosswalk. Although Barber tried to look behind him as he drove against traffic, he admitted he was aware that his car had blind spots and he could not see everything while traveling in reverse.

As Barber proceeded through the intersection, he was not sure if the light was red at Carlsbad Boulevard, but he saw a car stopped at the light and knew it was dangerous to drive through a crosswalk when pedestrians had the right of way. However, without knowing who had the right of way, he crossed through the crosswalk. When he collided with the victim while driving in reverse, he hit her with such force that the car was dented and caused her to fly 10 feet away, producing catastrophic injuries.

Simply put, Barber engaged in this incredibly dangerous course of action to avoid going an extra three quarters of a mile away to make a U-turn, which would have placed him on the right side of the road to turn onto Avenida Encinas. We cannot contemplate how any reasonable juror would not find Barber intentionally drove with wanton disregard for the safety of other people. In other words, the evidence proved beyond a reasonable doubt that Barber was aware that his actions presented a substantial and

25

unjustifiable risk of harm, and he ignored that risk. In this sense, the instant action presents a much more severe set of facts of reckless driving than the hypothetical driver in *Nowell*, who drove at a high rate of speed around a blind curve. (See *Nowell, supra,* 45 Cal.App.2d Supp. at p. 814.)

In short, on the record before us, we do not find any error associated with the jury instructions the court provided the jury.

## II

## GREAT BODILY INJURY

Barber argues that the jury's finding that he personally inflicted great bodily injury within the meaning of Penal Code section 12022.7 must be stricken because great bodily injury is an element of felony reckless driving. We disagree.

Barber's claim raises a question of law that we review de novo. (*People v. Prunty* (2015) 62 Cal.4th 59, 71.)

Vehicle Code section 23103 prohibits driving a "vehicle upon a highway in willful or wanton disregard for the safety of persons or property." Vehicle Code section 23105 sets forth the penalties that apply when reckless driving proximately causes specified injuries to a person other than the driver. Subdivision (a) of that section states, "A person convicted of reckless driving in violation of Section 23103 that proximately causes one or more of the injuries specified in subdivision (b) to a person other than the driver, shall be punished by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code, or by imprisonment in a county jail. . . ."

The injuries described in subdivision (b) include a loss of consciousness, a concussion, bone fracture, loss or impairment of the function of a body part or organ, a wound requiring extensive suturing, a serious disfigurement, brain injury, or paralysis. (See Veh. Code, § 23105 , subd. (b).)

26

Subdivision (c) of Vehicle Code section 23105 states the statute does not preclude or prohibit prosecution under any other provision of law.

At trial, the jury found true that Barber personally inflicted great bodily injury during the commission of a felony under Penal Code section 12022.7. Subdivision (a) of that section states in relevant part, "Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years."

Subdivision (g) of Penal Code section 12022.7 further specifies that the section does not apply if "infliction of great bodily injury is an element of the offense."

Barber argues that the trial court should have stricken the great bodily injury enhancement under Penal Code section 12022.7 because it was an element of the offense of reckless driving. The People counter that we need not reach this issue because the court granted Barber probation; thus, it did not impose the great bodily injury enhancement. To this end, the People emphasize that Penal Code section 12022.7, subdivision (g) states that the additional prison term should not "apply" when great bodily injury is an element of the offense. They further maintain that subdivision (g) does not indicate that the enhancement must be stricken, simply that it cannot be applied. Because an enhancement under Penal Code section 12022.7 was not applied here, the People urge this court to reject Barber's argument for this reason alone.

Barber contends the People misread the statute. He asserts that subdivision (g) of Penal Code section 12022.7 is not limited to situations where the enhancement itself was applied to a defendant's sentence. Instead,

27

according to Barber, subdivision (g) restricts even the allegation of a great bodily enhancement under Penal Code section 12022.7 if great bodily injury is an element of the underlying offense. We agree with Barber's reading of the statute.

Penal Code section 12022.7, subdivision (g) provides: "This section shall not apply to murder or manslaughter or a violation of Section 451 or 452. Subdivisions (a), (b), (c), and (d) shall not apply if infliction of great bodily injury is an element of the offense." Here, the jury found true that Barber personally inflicted great bodily injury, under Penal Code section 12022.7, subdivision (a), during the commission of reckless driving. However, subdivision (a) does not apply if great bodily injury is an element of the underlying offense. (See Pen. Code, § 12022.7, subd. (g).) Therefore, under the plain terms of the statute, it is the statute that does not apply in the first instance if subdivision (g) is triggered. We therefore reach the merits of Barber's argument that great bodily injury is an element of reckless driving under Vehicle Code section 23105.

As the parties admit, there is a published opinion directly addressing the issue Barber raises here. In *People v. Escarcega* (2019) 32 Cal.App.5th 362 (*Escarcega*), review granted May 15, 2019, S254865, the appellate court rejected the argument Barber advances in the instant action. In that case, the court determined that Penal Code section 12022.7, subdivision (g) did not bar a great bodily injury enhancement for reckless driving. (*Escarcega*, at p. 383.) The court determined that Vehicle Code "section 23105 is not a substantive offense because it does not define a criminal act." (*Escarcega*, at p. 373.) Instead, the court concluded "it is a sentencing provision that allows particularly serious forms of reckless driving to be punished a felonies rather than misdemeanors." (*Id*. at pp. 373-374.)

28

The opinion in *Escarcega, supra* 32 Cal.App.5th 362, review granted, was thoroughly reasoned. The appellate court analyzed the difference between substantive crimes and punishment statutes, engaged in statutory analysis, considered legislative history, and evaluated whether its interpretation of the subject statute would lead to absurd results. (*Id.* at pp. 375-383.) However, Barber does not directly address the court's reasoning in *Escarcega.* Instead, he argues "the fundamental premise that lies at the heart of the analysis in *Escarcega* is incorrect." He claims that the court in *Escarcega* was mistaken in its conclusion that Vehicle Code section 23105 is not a substantive crime but a sentencing provision.

To support his conclusion, Barber relies heavily on *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*). He claims that because Vehicle Code section 23105 increased punishment beyond the statutory minimum of a specific crime (reckless driving), under *Apprendi*, it must be considered "the same as an element of a new and more serious offense." However, Barber's reliance on *Apprendi* is misplaced. Neither what occurred below nor the appellate court's conclusion in *Escarcega* runs afoul of *Apprendi*.

In *Apprendi, supra*, 530 U.S. 466, the United States Supreme Court determined that, with the sole exception of facts relating to a prior conviction, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Id.* at p. 490.) The court explained that "the relevant inquiry is one not of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" (*Id.* at p. 494.) If so, regardless of whether a state labels the fact a sentencing factor or an element of an offense, the Sixth Amendment requires

29

that it be proven to a jury beyond a reasonable doubt. (*Apprendi*, at pp. 494-495.) Thus, the high court reasoned, "when the term 'sentence enhancement' is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict." (*Id*. at p. 494, fn. 19.)

Below, Vehicle Code section 23105 was presented as a sentencing enhancement to the jury. The jury found the enhancement true beyond a reasonable doubt. Thus, Barber's Sixth Amendment rights were not violated. (See *Apprendi, supra*, 530 U.S. at pp. 494-495.) *Apprendi* does not mandate that we conclude Vehicle Code section 23105 is a criminal statute rather than a sentencing provision. It simply provides that if a statute purports to increase a defendant's sentence beyond the maximum permitted for the underlying crime, the jury must find the elements of the enhancement statute proved beyond a reasonable doubt. We therefore follow the well-reasoned *Escarcega, supra* 32 Cal.App.5th 362, review granted, and reject Barber's argument here.

In an alternative argument, Barber asserts that a great bodily injury enhancement under Penal Code section 12022.7 cannot apply to a reckless driving offense, which caused injury under Vehicle Code section 23105. To this end, Barber analogizes Vehicle Code section 23105 to the offense of battery with serious bodily injury (Pen. Code, § 243, subd. (d)). Barber notes that Penal Code section 243, subdivision (f)(4) lists the following examples of "serious bodily injury": "loss of consciousness; concussion; bone fracture; protracted loss or impairment of function of any bodily member or organ; a wound requiring extensive suturing; and serious disfigurement." (Pen. Code, § 243, subd. (f)(4).) Barber further points out that the list of injuries under Vehicle Code section 23105, subdivision (b) lists the same injuries as under

30

Penal Code section 243, subdivision (f)(4) with the addition of brain injury and paralysis. (See Veh. Code, § 23105, subd. (b).) Barber then argues that California courts have recognized for analytical purposes, serious bodily injury in Penal Code section 243 is the same as great bodily injury in Penal Code section 12022.7. (See *People v. Hawkins* (1993) 15 Cal.App.4th 1373, 1375.) As such, Barber contends that because a great bodily injury enhancement cannot apply to a conviction for battery with serious injury, it cannot apply to reckless driving causing injury under Vehicle Code section 23105.

As a threshold matter, we observe that Barber's argument assumes that Vehicle Code section 23105 is a substantive crime, not a sentencing provision. In following *Escarcega, supra* 32 Cal.App.5th 362, review granted, we rejected that premise above. Thus, Barber's argument relying on analogizing Vehicle Code section 23105 to Penal Code section 243, subdivision (d) fails for the same reasons as his *Apprendi* argument.[7]

---

[7] To the extent it can be implied that Barber is arguing that a Vehicle Code section 23105 enhancement and a Penal Code section 12022.7 enhancement cannot both be imposed because they essentially are based on the same injury, we need not reach this issue. Here, although the jury found true both enhancements, the court did not impose either enhancement on Barber. Therefore, we need not weigh in on this issue.

## III

## REMAND TO ALLOW THE TRIAL COURT TO CONSIDER STRIKING THE GREAT BODILY INJURY ENHANCEMENT

Barber's final argument is that we must remand this matter to the trial court to allow it to consider striking the great bodily injury enhancement in furtherance of justice under Penal Code section 1385. We disagree.

Before sentencing, Barber filed a motion requesting that the court strike the great bodily injury enhancement and reduce the offense to a misdemeanor. In denying the motion to reduce the offense to a misdemeanor, the court provided the parties a detailed explanation why it would not reduce the offense. In doing so, the court noted "there were multiple [vehicle] violations that occurred," the injuries to the victim were "significant and severe," and "the perfect storm . . . was required to save the life of [the victim]." In declining to strike the great bodily enhancement, the court indicated it was not inclined to do so because it was not going to impose a prison term.

Penal Code section 1385 permits a court to strike or dismiss an enhancement. (Pen. Code, § 1385; *In re Varnell* (2003) 30 Cal.4th 1132, 1137.) A defendant is entitled to a sentencing decision made with the " 'informed discretion' " of the sentencing court. (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.) When a court is unaware of its discretion, the remedy is to remand for resentencing unless the record clearly indicates that the trial court would have reached the same conclusion if it had been aware of its discretion. (*Ibid*; *People v. Chavez* (2018) 22 Cal.App.5th 663, 713.)

Here, the record shows that the trial court was aware that it could strike the great bodily enhancement, but chose not to do so because it was granting probation. In considering the entire record, the court clearly tried to

strike a balance between holding Barber responsible for his reckless driving and the serious injuries he caused against his remorse and lack of criminal history. By refusing to reduce the offense or strike the enhancement, but granting Barber probation, the court believed it struck the proper balance. Moreover, to the extent the record is ambiguous, the court is presumed to have properly performed its official functions in the absence of evidence to the contrary. Under that presumption, the court is presumed to have been aware of and followed the applicable law. (Evid. Code, § 664; *People v. Stowell* (2003) 31 Cal.4th 1107, 1114.)

Finally, even if the trial court was not aware it had the discretion to strike the great bodily injury enhancement, remand is unnecessary because the record indicates that the trial court would have reached the same conclusion had the trial court exercised its discretion. The trial court made a thorough record detailing the reasons behind its sentencing decision. In doing so, it decided to maintain the serious charge and allegation, yet forego custody and grant probation. Given the detailed reasoning the court put into its decision, which is reflected in the record, we see no purpose in remanding this matter for the court to again exercise its discretion. Simply put, remand is not necessary.

33

DISPOSITION

The judgment is affirmed.

HUFFMAN, Acting P. J.

WE CONCUR:

HALLER, J.

IRION, J.